**Bernard TILLMAN, Jr.,**
**Plaintiff-Appellant,**

v.

**TRAVELERS INDEMNITY**
**COMPANY,**
**Defendant-Appellee.**

**No. 74–1446.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1975.

Robert B. Sessums, James Leon Young, Jackson, Miss., for plaintiff-appellant.

Joe H. Daniel, Jackson, Miss., for defendant-appellee.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff Tillman brought this Mississippi diversity action to recover damages for injuries he sustained when he fell from a scaffold while engaged in construction of a building as an employee of a company to which the defendant, Travelers Indemnity Company (Travelers), was the workmen's compensation insurance carrier. Although Travelers has paid workmen's compensation benefits to the plaintiff as provided by its contract, Tillman seeks an additional recovery because of Travelers' alleged negligence in providing certain safety engineering services or accident prevention surveys. With no controlling Mississippi cases, he relies primarily upon § 324A, Restatement of Torts, Second, which develops a theory of liability to third persons for the negligent performance of services undertaken for another. After careful examination of the briefs and record in this case, and after hearing extended oral argument, we believe the evidence failed to establish a breach of the duty imposed by that section. We affirm the directed verdict entered in Travelers' favor.

I.

Sometime before June 1967, H. A. Lott, Inc. (Lott) entered into a contract with the City of Jackson, Mississippi, for the construction of a building to be known as the "Municipal Auditorium." Prior to construction beginning, the Travelers Indemnity Company issued a workmen's compensation insurance policy to Lott to be effective January 1, 1967. A provision of that policy permitted, but did not require, Travelers to conduct periodic accident prevention surveys of the work being done by Lott at the auditorium. Pursuant to this policy Travelers' safety engineering representative, Charles L. Pope, made a series of accident prevention surveys at the auditorium site. After each of these inspections, Pope would prepare a report, which was forwarded to various Lott officials, recommending remedying of unsafe conditions and requesting Lott's "compliance" with those recommendations.

On January 26, 1967, Mr. Pope made an accident prevention survey while work was being performed on the outside of the auditorium. In his report of that inspection, he noted:

A substantial outside handrail and toe board should be installed on the bricklayers scaffolding which is now at a height of sixty feet and scheduled to be eventually erected to a height of approximately eighty-five feet.

The ensuing February 1967 report indicated that Lott had complied with this recommendation by Travelers.

The survey nearest in time to the date of Tillman's accident was made on June 6, 1967. Although at this time there had been work going on inside of the auditorium for approximately five weeks, there was no evidence presented of where the bricklayer's scaffolding was located and to what height it had risen on the day of the inspection. It is clear that on that date there was no scaffolding along the east wall balcony, the point from which Tillman fell. Testimony also indicates, however, that at no time were handrails being used on the scaffolding inside of the auditorium. In any event, the survey report of the June 6 inspection contained no indication of unsafe practices and no job safety recommendations.

On June 13, 1967, the day of the accident, Tillman was working for H. A. Lott, Inc., during the summer vacation between his junior and senior years of high school. He had first worked for Lott on the municipal auditorium job during the Christmas holidays of 1966 as a laborer whose job it was to supply

bricks, blocks and mortar to the bricklayers on the job. When he returned to the auditorium job at the end of the school year, he began doing essentially the same type of work.

On the day of the accident, the particular bricklayers with whom Tillman was working were laying blocks on the inside east wall of the auditorium above a ledge which was later to constitute a side balcony. This ledge itself was approximately twenty feet above the floor of the auditorium and the tubular steel scaffolding being used by the bricklayers was at a height of about eighteen to twenty feet above the ledge.

Tillman's work that day consisted of filling a wheelbarrow with mortar from a crane bucket on the west side of the auditorium, rolling the filled wheelbarrow over the floor of the main balcony to the east side, shoveling mortar from the wheelbarrow into a five gallon bucket, carrying the bucket out onto the scaffold where the bricklayers were working, and dumping the mortar onto mortar boards situated beside each bricklayer. The scaffolding surface was approximately five feet wide. The bricklayers and mortar boards took up approximately three feet of that surface closest to the wall, leaving approximately two feet or so on which Tillman had to walk with the mortar bucket.

Immediately prior to his fall, Tillman had made his normal trip to the west side of the auditorium and filled his wheelbarrow with mortar. After he had returned the wheelbarrow full of mortar across the main balcony to where the scaffolding began on the east side, he washed out his mortar bucket, and filled it with mortar. He then walked out onto the scaffold and proceeded to empty the bucket onto a mortar board. When he turned the bucket upside down to empty it, the mortar did not come out as usual, so he shook the bucket. The entire batch of mortar then came out of the bucket all at once. This caused Tillman to lose his balance and fall backwards off the scaffold. He fell approximately twenty feet to the ledge, bounced

off the ledge, and fell the remaining twenty feet to the concrete floor of the auditorium. He sustained extensive injuries as a result of the fall.

At the conclusion of the presentation of Tillman's case on the merits, Travelers moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a), specifying various reasons therefor. After extensive argument of counsel, the district court granted the motion and dismissed the complaint with prejudice. On this appeal the sole issue presented for review is whether the trial court erred in granting Travelers' motion at the close of plaintiff's case. The standard to be applied by a district court in ruling on such motions was clearly stated in Boeing Co. v. Shipman, 411 F.2d 365, 374–375 (5th Cir. 1969). We must decide whether there was "substantial evidence to create a jury question."

## II.

Tillman based his action against Travelers on the legal principles expressed by § 324A of the Restatement of Torts, Second:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The specific act or omission alleged as the basis for the suit against Travelers was the failure of its safety engineer who inspected the project to require that handrails be utilized on scaffolding being used by bricklayers inside the building.

According to plaintiff, this negligence proximately caused or contributed to his fall and injuries.

We have recently held that the principles of § 324A should be applied as Mississippi law in a diversity case. Judge Clark, writing for the court in Stacy v. Aetna Casualty & Surety Company, 484 F.2d 289, 292 (5th Cir. 1973) said:

> While we find no Mississippi case precisely in point, we assume from the favorable citation of a related section, § 325 of the First Restatement of Torts, in Long v. Patterson, 198 Miss. 554, 22 So.2d 490, 492 (1945), that the Mississippi courts would now adopt the rule of 324A.

In Stacy, a Mississippi laborer sued his employer's workmen's compensation carrier directly for negligent performance of safety engineering services. This Court held that since there was no evidence in that case to establish that the workmen's compensation carrier had undertaken to inspect the particular location of the employee's accident, the case should not have been submitted to the jury to determine whether its failure to do so amounted to negligence. As a second basis for its decision, the Stacy panel found that there was no evidence of the insurer's assumption of a duty owed by Stacy's employer to its employees, and no evidence that Stacy's injury resulted from reasonable reliance, by him or his employer, on the insurer's undertaking. In the absence of such evidence, the requirements for the cause of action set out in § 324A had not been met.

It should be noted that the Stacy court, since it found no evidence to establish a cause of action, did not need to decide whether the insurance company was immune from suit for plenary damages because of the exclusive liability provisions of the Mississippi Workmen's Compensation law. Miss.Code 1972 Ann. § 71–3–9. We take the same approach in this case. Neither must we consider many of the other ramifications of the law of third party liability which may stem from voluntary safety inspections

by workmen's compensation insurance carriers. *See generally* Hammond & Poust, Safety Service Liability—A Growth Area?, 1969 ABA Sec.Neg. & Comp.L. 259; Larson, Workmen's Compensation Insurer As Suable Third Party, 1969 Duke L.J. 1117; Comment, The Workmen's Compensation Insurance Carrier As A Third Party Tortfeasor, 1 Conn.L.Rev. 183 (1968); Comment, Insurer's Liability for Negligent Performance of Voluntary Safety Inspections, 3 Cumberland-Samford L.Rev. 118 (1972); Comment, Workmen's Compensation— The Carrier's Reserved Right of Inspection and the Injured Employee, 16 DePaul L.Rev. 89 (1966); Note, Workmen's Compensation Insurers—A Duty to Inspect?, 34 La.L.Rev. 856 (1974).

The case *sub judice* is clearly distinguishable from Stacy as to the first basis for the decision. In Stacy, Aetna had only undertaken to conduct safety engineering services in those areas where the employer's safety director or the occurrence of prior accidents indicated consultation was needed. Because of this policy, Aetna's safety man had never inspected the room where Stacy's accident occurred. This is not the case presented here. As is indicated by the various safety inspection reports prepared by Travelers, the inspections of the Lott Construction Company site were of the "entire project." It is undisputed that on June 6 Mr. Pope did inspect the inside of the auditorium, where Tillman was injured. Thus, there was sufficient evidence to at least make a jury question as to whether Travelers did "undertake . . . to render services to another which [it] should recognize as necessary for the protection of a third person" under § 324A.

As to the second basis for the Stacy decision, however, this case is indistinguishable. In neither case was there evidence presented which satisfied the injured workman's burden of going forward with evidence as to any of the three alternative conditions required by Restatement § 324A. Something more than the undertaking of safety inspec-

tions and a failure to exercise reasonable care in connection therewith is required. For liability to attach, it must be shown that either (a) the insurer's negligence increased the risk of harm to the employee; or (b) the insurer undertook to perform a duty owed by the employer to the employees; or (c) the harm is suffered because of reliance of the employer or the injured employee upon the undertaking.

As to subpart (a), as in *Stacy,* there is no contention in this case that any act or omission by the insurer, Travelers, increased the likelihood of harm to the employees within the meaning of § 324A.

█ As to subpart (b), there was no proof in either case that the workmen's compensation insurer undertook to perform a duty owed by the employer to the employees. In each case the employer had a legal obligation to exercise reasonable care in maintaining a safe place in which its employees could work. Long v. Woollard, 249 Miss. 722, 163 So.2d 698 (1964). In each case the employer had its own safety program and consulted with a representative of the insurer regarding recommendations for safety improvements. More importantly, in each case the record was void of any indication that the employer had delegated to the insurer any part of its direct and primary duty to discover unsafe conditions. Proof that the insurer conducted its own safety inspections and consulted with the employer afterwards "falls far short of systemwide assumption of . . . [the employer's] .duty to discover . . . hazards." Stacy v. Aetna Casualty & Surety Co., *supra,* 484 F.2d at 294.

█ Finally, as to subpart (c), there was no evidence in either case that the injured workman's accident occurred because of reliance by either the plaintiff himself or by his employer on the insurer's undertaking. In the instant case Tillman offered no testimony that he had ever heard of Travelers prior to his injury or had ever seen a safety inspector from that insurer at the municipal auditorium job site. He relies heavily, however, upon alleged reliance by his employer, Lott. He points to the fact that whenever Travelers made safety recommendations (*e. g.,* when it noted in its January 1967 report that handrails and toe boards were needed on the bricklayers' scaffolding), they were complied with by Lott. According to the plaintiff, this supplies the reliance factor which was missing in *Stacy.*

Plaintiff misinterprets the type of reliance we referred to in *Stacy* and in our earlier case of Hill v. United States Fidelity & Guaranty Co., 428 F.2d 112 (5th Cir. 1970), cert. denied, 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971) (Florida diversity case):

> The carrier may also be liable if the employer so relied on the insurer's undertaking that it neglected its own safety inspection program to his [the employees] detriment.

Stacy v. Aetna Casualty & Surety Co., *supra,* 484 F.2d at 295. The evidence in this case fails to establish that Lott had relied on Travelers' inspection services to Tillman's detriment. Although it was clearly shown that Lott consulted with Travelers' safety representative and complied with his recommendations for safety improvements, there is no indication in the record that because of Travelers' surveys Lott neglected or reduced its own safety program. Thus, as in *Stacy,* there was no evidence of the type of reliance required by § 324A.

█ In short, in applying the principles expressed in § 324A of the Restatement of Torts, Second, as elucidated upon in *Stacy,* most favorably to the facts of the instant case, we find no evidence which would satisfy plaintiff's burden of proof as to any of the three conditions imposed by § 324A. Consequently, we affirm the decision of the district court in granting a directed verdict in Travelers' favor.

Affirmed.