John R. JETER, Jr.,
Plaintiff-Appellant,

v.

ST. REGIS PAPER CO.,
Defendant-Third Party
Plaintiff-Appellee-Appellant,

American Employers Insurance
Company, Intervenor,

Mid South Painting Specialist, etc.,
Third Party Defendant-Appellee.

No. 73–3470.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1975.

974

Robert B. Sessums, James L. Young, Jackson, Miss., for plaintiff-appellant.

John M. Roach, Curtis E. Coker, Jackson, Miss., for St. Regis.

W. Swan Yerger, Jackson, Miss., for Mid South Painting.

James A. Becker, Jr., Jackson, Miss., for Am. Employ. Ins. Co.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

John R. Jeter, Jr. was paralyzed from the chest down in a forty foot fall from a "swinging scaffold" on which he had been painting. Having received Mississippi Workmen's Compensation benefits from his employer, Mid-South Painting Specialists, Jeter now seeks compensatory damages against the owner of the chemical silo he was painting, St. Regis Paper Company, for whom his own employer was working as an independent contractor. A jury returned a verdict against plaintiff on the one theory of recovery approved by the trial court, *i. e.*, whether St. Regis had violated a nondelegable duty to insure that proper precautions were taken to avoid injury arising from inherently dangerous work. On this fourteen point appeal, Jeter questions the refusal of the trial judge to submit the case to the jury on his other two theories of liability: *first*, liability of St. Regis for violations of and failure to remedy violations of the Occupational Safety and Health Act of 1970 (OSHA) and the regulations promulgated thereunder by the Secretary of Labor, and *second*, liability for negligent performance of assumed obligations regarding safety engineering. We affirm the district court on the grounds that *first*, OSHA does not provide a private right of action for the employee of an independent contractor against an owner for the owner's violation of OSHA's requirements, a decision of first instance in this Circuit, *second*, the evidence in this case was insufficient to support the allegation that St. Regis assumed safety engineering responsibilities to Jeter, and *third*, none of the other points on this appeal, principally concerning jury charges, admission of evidence, and rulings of law, merit reversal.

The case brought forth claims and affirmative defenses from virtually everyone connected with Jeter's work. The initial defendant St. Regis denied the allegations of the complaint and affirmatively asserted as defenses 100% contributory negligence and assumption of risk by Jeter. St. Regis also filed a third-party complaint against Mid-South, as Jeter's employer, seeking both contractual and common law indemnification in the event that Jeter recovered against it. St. Regis alleged that negligence on the part of Mid-South was the sole or at least a contributing proximate cause of Jeter's injury. Mid-South responded with allegations of negligence against Jeter and St. Regis, and asserted that Jeter's exclusive remedy against Mid-South was under the Mississippi Workmen's Compensation Act. To complete the chorus, American Employers Insurance Company, Mid-South's workmen's compensation carrier, intervened as plaintiff to claim the workmen's compensation and medical payments it had made to Jeter.

A short recital of the facts illustrates the relationship of the various parties and reflects the circumstances of Jeter's unfortunate injuries. Pursuant to a routine maintenance schedule, St. Regis contacted various industrial painting contractors in the fall of 1971 to solicit bids for the painting of two salt-cake silos and a power-house stack located at the St. Regis plant near Monticello, Mississippi. The job was ultimately awarded to Mid-South, and a contract was executed by both parties on October 18, 1971.

Jeter, age twenty, was employed by Mid-South in the spring of 1972, to assist in the work being done for St. Regis. Jeter's father had been an industrial painter for many years, and plaintiff had done part-time industrial painting work since he was fifteen years old. While his experience on a swinging scaffold was somewhat limited, Jeter had sufficient general experience in the field to be hired by Mid-South as a "journeyman" painter, a rating higher than either "helper" or "apprentice." He testified at trial that he was aware of the dangers of the job and of the safety precautions he could have taken, and that he understood the operation of the scaffold.

On April 6, 1971, the day of the accident, Jeter had spent the morning on the ground running the paint pot and assisting in the operation of the swinging scaffold from which a co-worker was sandblasting and painting a salt-cake silo. The silo was a cylindrical structure with a conical top which peaked over eighty-eight feet from the concrete base on which it was anchored. The middle twenty-nine and one-half feet had a vertical surface. The aluminum scaffold was suspended from the "catwalk" at the top of the silo and was raised and lowered by two, one-half inch manila ropes, each laced through two double block-and-tackles, which provided a combined mechanical advantage of four for the rope on each end.

Sometime after lunch Mid-South's foreman told Jeter to go up on the scaffold and assist a co-worker, Herrington, in the sandblasting and painting operation. At that time no mention was made to Jeter of the availability of a safety belt for his use, even though such belts were at the job site and could have been used. Jeter uneventfully negotiated his way to the scaffold and began to assist in the operation. As the painting of the area accessible from the scaffold was completed, each man would simultaneously untie the rope on his end and lower the scaffold a prescribed distance, where the ropes would be resecured and work begun on the newly accessible area. After lowering the scaffold in this manner several times in the course of over two hours, the two men ran out of paint and decided to lower themselves to the ground, either to get more paint or to prepare to go home since it was almost quitting time. When the two men untied their ropes Jeter had difficulty with his end and shouted this to Herrington, who immediately resecured his rope and stepped from the scaffold onto a narrow ledge on the silo, yelling for Jeter to do likewise. Jeter did not do so, and after holding on for a few more seconds the rope apparently slipped from his hands causing the scaffold to drop to a vertical position, suspended by Herrington's secured end, and Jeter fell forty feet to the ground, landing on the concrete base. The fall caused his spinal cord to be severed at about chest level, rendering him a permanent paraplegic.

## CAUSE OF ACTION UNDER OSHA

■ Although in all other aspects of this diversity jurisdiction case we are asked to apply Mississippi law, plaintiff asserts that a federal cause of action was impliedly created in his favor against St. Regis by the Occupational Safety and Health Act of 1970. See 29 U.S.C.A. § 651(b). He appeals the trial court's charge to the jury that it could not award damages under this OSHA count because Congress had not intended that law to affect or apply to a relationship such as the one between St. Regis and Jeter. Assuming without deciding that St. Regis may have violated the requirements of OSHA and the regulations promulgated thereunder by the Secretary of Labor, we affirm the trial court's charge and hold that no cause of action for such violations can be implied under OSHA to run in favor of a person who was not an employee of the violator against whom recovery is sought.

The Occupational Safety and Health Act of 1970 imposes a duty on employers and provides for enforcement of that duty by criminal sanctions, civil penalties recoverable by the United States for deposit into the Treasury of the United States and, under certain circumstances, injunction of the violation of the duty by a district court acting upon application of the Secretary of Labor. See 29 U.S.C.A. §§ 662, 666. Congress has set up a comprehensive system for the promulgation and enforcement of regulations and standards under OSHA. Nowhere in the language of the Act, its legislative history, or in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms. See 1970 U.S.Code Cong. & Admin.News, pp. 5177–5241; 29 U.S.C.A. § 651. The only provision in the statute which addresses itself to a private remedy clearly

indicates that Congress did not intend OSHA to create a new action for damages in favor of employees. Section 653(b)(4) of the Act provides that

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

It seems clear that Congress did not intend OSHA to create a new private cause of action, but, on the contrary, intended private rights to be unaffected thereby.

The provisions for the enforcement of OSHA and the regulations promulgated thereunder are sufficiently comprehensive to make such a private right of action unnecessary to effectuate the congressional policy underpinning the substantive provisions of the statute. *See* Martinez v. Behring's Bearings Service, Inc., 501 F.2d 104 (5th Cir. 1974); *cf.* Breitweiser v. KMS Industries, Inc., 467 F.2d 1391, 1394 (5th Cir. 1972), cert. denied, 410 U.S. 969, 93 S.Ct. 1445, 35 L.Ed.2d 705 (1973).

We have been unable to find a single case wherein a court has found such a private right of action created by OSHA. Although the results are not yet conclusive as to the litigation of private claims spawned by this relatively new Act, the courts so far have been unanimous in their rejection of contentions similar to the one made by Jeter. This Court has previously rejected any private right by an employee against the executive officers of the employer. Skidmore v. Travelers Ins. Co., 356 F.Supp. 670 (E.D.La.), aff'd, 483 F.2d 67 (5th Cir. 1973). The Fourth Circuit has refused to imply an action against the employer itself, where state workmen's compensation was the exclusive remedy of the injured party. Byrd v. Fieldcrest Mills, Inc., 496 F.2d 1323 (4th Cir. 1974). The Sixth Circuit has refused an employee-against-employ-

er action, as well as an action by the employee against the supervising engineer, who was not his employer. Russell v. Bartley, 494 F.2d 334 (6th Cir. 1974). *See also* Hare v. Federal Compress & Warehouse Co., 359 F.Supp. 214 (N.D. Miss.1973); Dekle v. Todd, 132 Ga.App. 156, 207 S.E.2d 654 (1974).

Although the facts here do not call upon us to decide definitively whether OSHA may create a private right of action by an employee against his employer, we perceive no base upon which to posit a claim on behalf of Jeter, a nonemployee, against St. Regis. St. Regis owes no duty to Jeter under OSHA. There being no duty, there can be no breach. The district court was correct in not submitting this theory of action to the jury.

## ASSUMPTION OF SAFETY ENGINEERING RESPONSIBILITIES

█ Jeter next contends that the trial court erred in instructing the jury that it could not award any damages on the count which alleged that St. Regis had assumed the obligation of providing safety engineering services. Jeter argues that the jury should have been instructed to allow recovery if it found negligent performance by St. Regis of its safety engineering responsibilities. The evidence does not support such a charge. The *sine qua non* of the claim is such an assumption of responsibility as may be relied upon. The district court found as a matter of law that there was no such assumption of responsibility by St. Regis. Jeter does not attack the finding that Mid-South was an independent contractor who selected its own employees, selected their working hours, and provided all of the equipment used on the job. As the Supreme Court of Mississippi has said:

> An independent contractor is one rendering services in the course of his occupation representing the will of his employer as to the results alone, and not as to the means of accomplishing those results.

Gulf Coast Motor Express Co. v. Diggs, 174 Miss. 650, 165 So. 292, 293 (1936).

The contract between St. Regis and Mid-South was to accomplish an end result. St. Regis did not reserve any right therein to control the physical conduct of Mid-South's employees in the performance of the undertaking. The only "safety" feature of the contract was a general term requiring Mid-South to comply with St. Regis' Safety and Fire Safety Manuals. Before beginning the work for St. Regis, Mid-South's foreman met with a St. Regis representative who provided him with copies of manuals and other general information, such as the location of a telephone and the first aid station. St. Regis did not have, and knew that it did not have, anyone capable of providing Mid-South with specific safety engineering with regard to the details of the painting assignment. The very reason St. Regis hired an independent contractor to do the job was because none of its employees could perform such a service. Mid-South and St. Regis agree that at no time did either understand St. Regis to be assuming safety engineering responsibilities for Mid-South's employees. Jeter said he never looked to St. Regis for any safety rules or regulations. Under the circumstances of this case, it is clear that Jeter, Mid-South and St. Regis all understood Mid-South, not St. Regis, to be solely responsible for the safety engineering necessary for the successful completion of the job. With the total absence of any facts showing an assumption of safety engineering by St. Regis, the trial court properly instructed the jury not to consider such a basis for possible recovery by Jeter. See Stacy v. Aetna Casualty & Surety Co., 484 F.2d 289 (5th Cir. 1973); cf. Tillman v. Travelers Indemnity Co., 506 F.2d 917 (5th Cir. 1975).

## OTHER POINTS OF ERROR

■■ Jeter objects to the trial court's refusal to charge the jury as he requested on an alleged nondelegable duty owed by St. Regis as an employer of an independent contractor, Mid-South, to insure that Mid-South followed reasonable safe-ty procedures. Plaintiff requested a charge that if the jury found (1) that St. Regis retained control of any part of the work, (2) that St. Regis knew that the work being done by Mid-South was likely to create a peculiar risk of physical harm unless special precautions were taken, or (3) that the work involved a special danger to others inherent in the work, then St. Regis would have had a duty to see that Mid-South followed reasonable safety procedures on the job. While refusing to charge in the precise words requested by Jeter, the trial court did instruct the jury that if it found a special danger to be inherent in the work, St. Regis would be under a nondelegable duty to assure the taking of reasonable safety precautions to avoid injury from that danger. We view this charge as stating the law under (2) and (3) above substantially as requested by Jeter. A trial court is not required to instruct the jury in the particular manner or form requested by the parties as long as the subject matter of such requested instructions was sufficiently covered by other instructions by the court. Fleming v. Michigan Mutual Liability Co., 363 F.2d 186, 189 (5th Cir. 1966).

■■ There was no evidence that St. Regis retained control of the work as set forth in request (1). A trial judge need not instruct on any theory of law for which there is no factual predicate in the evidence as presented to the jury. See, e. g., Scrivener v. Atchison, Topeka & Santa Fe Railway Co., 409 F.2d 1356 (5th Cir. 1969). Had there been sufficient facts of control to warrant the requested instruction, the fact might have made St. Regis Jeter's "employer," and Jeter's exclusive remedy would have been workmen's compensation benefits, which he received. Cf. Biggart v. Texas Eastern Transmission Corp., 235 So.2d 443 (Miss. 1970). The liability instruction, read in conjunction with the rest of the instructions and in connection with the contentions aired by the parties below, and viewed from the standpoint of the jury, fairly instructed the jury of the law to be applied to any facts it could reasonably have found from the evidence

presented. *See* Zeigler v. Seaboard Coast Line R.R. Co., 437 F.2d 80 (5th Cir. 1971).

Jeter contends that the trial court erred in charging the jury that he was guilty of contributory negligence as a matter of law, and in repeatedly mentioning it to the jury. The undisputed facts as elicited in plaintiff's own testimony establish conclusively that he was guilty of some degree of negligence. He had worked as a painter during summers and school holiday breaks since the summer of 1967 and had worked on a scaffold similar to the one involved in the accident for two weeks in the summer of 1969 and again for a period in the summer of 1970. He had been lowering one end of the scaffold from a position on the ground on the morning of the accident, was acquainted with the operation of the scaffold, and knew that if he grabbed either the "tail" rope or the four ropes running between the two double block-and-tackles that the scaffold would remain stationary. Although not wearing any safety apparatus on the day of his accident, plaintiff had used a safety belt before on another job. Considering all of this experience and the ease with which Jeter could have prevented his own injury, the trial court was correct in concluding that Jeter was negligent as a matter of law.

Under Mississippi's comparative negligence statute contributory negligence would not bar recovery entirely, *see* Miss.Code § 11–7–15 (1972), if the jury had found some negligence on the part of St. Regis. Reading the instructions to the jury as an integrated whole, not picking any sentences out for special consideration, we disagree with plaintiff that the trial court unduly emphasized Jeter's contributory negligence. The court did mention it more than once, but, after its initial ruling, each instance was in explanation of one of the various other elements of the instruction, such as the effect of the comparative negligence statute.

Plaintiff asserts error on the part of the district court in various rulings on admission of evidence, instructions to the jury and argument by opposing counsel to the jury, all concerning either Jeter's benefits under Mississippi's workmen's compensation law, or the relationship between the workmen's compensation carrier and the issues in the suit. Plaintiff first interjected workmen's compensation into the suit by allegation in the complaint. He did not object when the subject came up in his own cross-examination. At the conclusion of the trial Jeter's counsel argued the workmen's compensation carrier's right of subrogation to the jury, and requested the court to instruct the jury to consider that the workmen's compensation insurer of Mid-South, who had intervened as a party-plaintiff, would be reimbursed for any of its payments for medical and rehabilitative expense before plaintiff would receive any portion of damages awarded. The trial court gave that instruction, but also instructed more fully on what future benefits Jeter could anticipate from the insurer. The trial court did this in an effort to present "all of the facts and all of the circumstances in order that [the jury] might be in a better position to draw reasonable inferences from those facts and circumstances . . . rather than to be kept in the dark on any important question." Considerations of fairness do not allow plaintiff to interject into the suit the insurer's claim as it might be beneficial to enhance his recovery, and then object to the full picture as prejudicial.

We find no inconsistency in giving a preemptory instruction on St. Regis' claim for contractual indemnification against Mid-South and then giving the further instruction that Mid-South, because of the workmen's compensation law, could not be liable to Jeter or St. Regis for any act of its negligence. In context the trial court, as requested by St. Regis, was making it clear that just because Mid-South would ultimately be liable for a jury finding of liability against St. Regis, the jury could not find against St. Regis in order to impose liability for what it considered negligence

on the part of Mid-South. Read in such context and in conjunction with all other instructions, this charge was not improper or prejudicial.

■ Plaintiff asserts error in the trial court's decision to allow Mid-South's counsel to make a jury argument after having directed a verdict against Mid-South on the only issue in the third-party complaint, the indemnification of St. Regis for any damages awarded against it. This decision by the trial court gave the defendants twice as much time as plaintiff had to argue his case to the jury. While it might have been preferable for plaintiff to have an equal amount of time or for only one counsel for either St. Regis or Mid-South to present their admittedly similar closing arguments, we do not see such an abuse of discretion as to require reversal. See Hodge v. United States, 271 F.2d 52 (5th Cir. 1959). Rule 14, F.R.Civ.P., allows the third-party defendant to assert any defenses against the plaintiff which the third-party plaintiff has to the plaintiff's claim. There can be no doubt that Mid-South could argue St. Regis' lack of liability to Jeter as a defense to the claim against it by St. Regis. Furthermore, the directed verdict against Mid-South effectively meant that it, not St. Regis, would ultimately have the financial burden of paying any recovery allowed Jeter. Mid-South had good reason to argue the basic liability issue to the jury. Plaintiff's counsel made no mention of the allocation of oral argument until after counsel for St. Regis had argued, and Mid-South's counsel was about to begin his statement to the jury. Under such circumstance we find no abuse of discretion in the district court's permitting Mid-South's counsel to argue St. Regis' lack of negligence to the jury. The fact that this gave Mid-South and St. Regis a combined total of allocated time greater than Jeter's counsel does not require reversal, absent manifest injustice. From the record it appears that Jeter's counsel had sufficient time to complete his full and able argument without the need to request more time. Viewed in the context of the four day trial, the exposure of the jury to a few minutes more of argument on defendant's position than on plaintiff's is not reversible error.

We have considered all other contentions of plaintiff including the trial court's refusal to direct a verdict in his favor, that court's denial of his new trial motion, and the various alleged evidentiary errors, and find them to be without merit.

Affirmed.