Gary BLALOCK

v.

SYRACUSE STAMPING CO., INC., McMaster-Carr Supply Co., Inc. and National Solvents

v.

TRENTON FIBRE DRUM CO., INC. and Allendale Mutual Insurance Company.

Civ. A. No. 82–3095.

United States District Court, E.D. Pennsylvania.

April 19, 1984.

John P. Penders, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Syracuse Stamping Co., Inc., third party plaintiff.

Thomas S. Brown, Hecker, Rainer & Brown, Philadelphia, Pa., for Allendale Mut. Ins. Co., third party defendant.

OPINION

LUONGO, Chief Judge.

This case arises from a fire occurring at the premises of plaintiff's employer, the Daily Corporation, in which plaintiff was severely injured. Plaintiff, alleging that the fire was caused by the ignition of a large quantity of flammable MEK liquid which had collected on the floor because of a defective self-closing drum gate or valve attached to a 55 gallon drum of MEK, sued several defendants, including Syracuse Stamping Company, Inc., manufacturer of the valve. Syracuse filed a third-party complaint against Allendale Mutual Insurance Company, the Daily Corporation's property fire insurer, seeking indemnity or contribution for Allendale's negligent inspection of Daily Corporation's facility, alleging liability under § 324A of the *Restatement (Second) of Torts*, which provides:

§ 324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[1]

Plaintiff's claims against all defendants have been settled, but there remains unresolved the third-party claim of Syracuse against Allendale. Allendale has moved for summary judgment maintaining that any inspections it performed were not an undertaking to render services to Daily

---

1. Section 324A has been treated by the courts as correctly stating Pennsylvania law. *Evans v.* *Liberty Mutual Insurance Company,* 398 F.2d 665 (3d Cir.1968).

Corporation and that Daily Corporation did not rely on these inspections.

Summary judgment may be granted only if the record clearly establishes the existence of "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Because Syracuse has failed to raise an issue of fact as to the purpose of Allendale's inspections and as to Daily Corporation's reliance on those inspections, I will grant Allendale's motion.

Plaintiff's employer, Daily Corporation, is a manufacturer of steel tubing. Part of the manufacturing process is the electrostatic painting of these tubes. In the paint room where the accident happened, Daily Corporation maintained one 55 gallon drum of each of three solvents, including methylethylketone (MEK), used in the painting process. The drums were kept in a horizontal position in a wooden cradle and were equipped with Syracuse-produced self-closing gate valves. Plaintiff alleged that the failure of these valves, which allowed a large quantity of MEK to collect on the floor, was a cause of his injury. Syracuse has alleged that Allendale was negligent in failing to recommend to Daily that it limit to a one-day's supply the quantity of MEK, or of flammable solvents in general, stored within the building. Since MEK was used only to clean equipment and workers' hands, a daily supply would have been only a few gallons and this small amount, Syracuse argues, could not have caused plaintiff's injury.

Syracuse argues that Allendale's periodic inspections of Daily's premises, using Factory Mutual Engineering Association (FMEA) experts, constituted an undertaking to provide inspection services for Daily; that Daily relied upon that undertaking by implementing the safety recommendations it received from Allendale; and that Allendale's inspection was negligent.

Allendale responds that it has no duty to either Daily or plaintiff, Blalock, because the inspections were solely for its own loss prevention and underwriting purposes and there is no evidence that the inspections were undertaken to render a service to Daily. Further, Allendale argues that there is no evidence that Daily or Blalock relied on its inspections, and therefore there was no causal link between the inspections and Blalock's injuries.

The threshold issue under § 324A is whether the party charged undertook a duty to the person for whom services were allegedly performed or to an injured third-party. In *Evans v. Liberty Mutual Insurance Company*, 398 F.2d 665 (1968), the court considered several factors in making its determination that the insurer had assumed no duty by making inspections. First, the court found that the safety recommendations the insurer had made were merely advisory; that the insurer had no power or authority to compel its insured to act upon those recommendations; that the recommendations were not followed; and that the insurer was under no legal or contractual duty to inspect. Next, the court found that primary responsibility for the safety of the plant employees remained with the employer-insured, and finally, that the insurer had not undertaken to inspect the entire plant.

In the instant case, all but one of these findings is present. The record does show that Daily did implement many of the recommendations made by Allendale, but in my view, this one factor does not establish a duty on the part of the insurer. *Evans* holds that making safety recommendations does not establish a duty. It would disserve the public policy of protecting workers' safety to hold that a duty arises because safety recommendations were implemented.[2]

Syracuse contends that there is a fact issue as to whether Allendale's recommendations were merely advisory by-products of inspections conducted (as Allendale

2. I am not, of course, addressing a situation in which implementation of the recommendation itself causes injury.

maintains) only for its loss prevention and underwriting purposes, or whether there was the additional purpose to supply Daily Corporation with inspection services. In support of the inference that Allendale inspected for Daily, Syracuse points to the use of the term "loss prevention" and the fact that Daily was provided with copies of the loss prevention report, but Allendale's submissions to the contrary are clearly dispositive on this point. First, there is the disclaimer which appears on its Loss Prevention Report:

This report is intended to assist you in reducing the possibility of loss to the property insured with the Factory Mutual Companies by bringing to your attention hazards and lack of protection which need prompt consideration to prevent such loss to property. It is not intended to imply that all other hazards and conditions are under control at the time of this inspection. The liability of the Factory Mutual Companies is limited to that covered by their insurance policies. No other liability is assumed by reason of this report as *it is only advisory in nature* and the final decision must be made by you. (Emphasis added).

Second, Allendale cites ¶ 8 of Syracuse's Answer to the Summary Judgment Motion.

8. Factory Mutual Engineering Association (hereinafter "FMEA") (not named as a defendant in this suit) conducted periodic inspections on behalf of Allendale solely for the underwriting and loss prevention purposes of Allendale.

In light of these submissions, Syracuse's inferences do not raise an issue of fact on the duty question under the *Evans* case. I must, however, examine one additional factor. In *Blessing v. United States*, 447 F.Supp. 1160, 1189 (E.D.Pa.1978), the court held that duty could be established by an actual inspection of the entire plant or of the specific instrumentality which caused the injury. Syracuse has neither alleged nor cited evidence that FMEA/Allendale inspected the entire plant, but it does argue that the inspectors "became actually apprised of the fact that Daily was storing a full 55 gallon drum of MEK inside the building proper in close proximity to an electrostatically charged paint line." Syracuse's Memorandum of Law at 3. Syracuse bases that argument on portions of the depositions of the two FMEA inspectors who inspected Daily Corporation's premises.

Q. Did you inspect what has been described as the paint room?

A. Yes, I did.

Q. And were you aware, as a result of that inspection, that Daily Corporation had in the paint room an electrostatically charged paint line?

A. Yes.

Q. Did you become aware as a result of that inspection that, among other things, in the paint room that Daily Corporation stored 55 gallon drums of various solvents?

A. I don't recall if I specifically saw solvents. They had paints, I know, and it is standard to also to provide solvents to make that paint workable.

Deposition of Ronald Megasko at 21.

Q. Did you become aware that Daily Corporation had in the paint room an electrostatically charged paint line?

A. Yes.

Q. And what else was stored in the paint room, if anything?

A. They also had storage of flammable liquids.

Deposition of Sean Knox at 8.

It is clear that these statements do not support Syracuse's contention. They are also inadequate to raise an issue of fact about FMEA's inspection of the instrumentality which injured plaintiff if that instrumentality is defined as the indoor storage of excessive amounts of MEK. It is, however, possible to define the instrumentality which injured plaintiff more broadly, *i.e.*, the paint room situation in which the horizontal storage of excessive amounts of flammable solvents in close proximity to the electrostatic paint line caused injury. Although Syracuse does not specifically ad-

vance this argument,[3] I have considered it because, on this record, it is the only circumstance in which an issue of fact about Allendale's duty to Daily or Blalock might exist.

I will assume, *arguendo*, that there is an issue of fact on the duty question. This then requires an examination of the issue of causation. Syracuse relies on ¶ (c) of § 324A, and asserts that Daily Corporation relied on the inspections performed by Allendale. Section 324A(c) comment (e) provides clarification on the meaning of this subsection.

> e. *Reliance.* The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. This is true whether or not the negligence of the actor has created any new risk or increased an existing one. *Where the reliance of the other, or of the third person, has induced him to forego other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.* (Emphasis added.)

Syracuse cites several sections of the deposition of Edward Barnshaw, Daily's Plant Manager, to demonstrate reliance. These sections, at most, show that Barnshaw acknowledged Allendale's greater expertise in fire protection and safety and that Daily Corporation sought to implement all reasonable recommendations made by Allendale with which Barnshaw agreed.

Syracuse also points out that the recommendations made by Allendale were implemented.[4] Syracuse has not presented any evidence to demonstrate that Daily abandoned any other precautions in reliance on Allendale's actions. To the contrary, Allendale has submitted the affidavit of Barnshaw stating that both Daily Corporation and its Workers' Compensation carrier carried on their own safety inspections and maintenance programs. It also states that no precautions or remedies were foregone in reliance on Allendale's inspection. Barnshaw's affidavit remains uncontroverted. In view of this affidavit and of Syracuse's failure to present any evidence that Daily Corporation relied upon Allendale's inspection to forego any of its own precautions, I hold that no issue of fact exists as to the causation portion of § 324A. Summary judgment is therefore appropriate.

---

**3.** It is unclear whether or if Syracuse is attempting to establish liability based on Allendale's inspection of the injury-causing instrumentality, *Blessing v. United States,* 447 F.Supp. 1160 (E.D. Pa.1978), or on Allendale's knowledge of the specific hazard, *Clark v. Employers Mutuals of Wausau,* 297 F.Supp. 286 (E.D.Pa.1969). It is perhaps because of this uncertainty that Allendale has not addressed either of these issues in its submissions or affidavits. Rather than ask the parties to clarify and submit additional materials, I have assumed the existence of an issue of fact on the question of duty.

**4.** I note that the record does not support Syracuse's interpretation of the facts. The record reflects that while many of Allendale's recommendations were implemented or to be implemented, a significant number were not. In addition, some of the problems identified by Allendale were corrected by Daily, but not in the suggested manner. For example, Allendale suggested the use of Factory Mutual approved self-closing valves for use on the drums of solvent stored in the paint room. Daily purchased a different type of self-closing valve from Syracuse. It is the alleged malfunctioning of that valve which caused the accident at issue here.