James SANTILLO and
Josephine Santillo

v.

CHAMBERSBURG ENGINEERING COMPANY, Westinghouse Electric Corporation, Crowder Jr. Company and National Loss Control Services Corporation.

Civ. A. No. 83–3829.

United States District Court,
E.D. Pennsylvania.

Feb. 6, 1985.

---

25. Law No. 45 of April 18, 1935, as amended, 11 L.P.R.A. §§ 1, *et seq.*

Joseph Lurie, Philadelphia, Pa., for plaintiff.

Lowell A. Reed, Jr., Philadelphia, Pa., for Crowder Jr. Co.

Philip Kircher, Philadelphia, Pa., for Westinghouse Elec. Corp.

Richard A. Kramer, Philadelphia, Pa., for Chambersburg Engineering Co.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently before me in this products liability suit is defendant National Loss Control Services Corporation's ("NATLCO's") motion for summary judgment. For the reasons set forth below this motion will be denied.

### Background

This is a rather complicated products liability case. Plaintiff, who was employed as a plant manager by non-party Phoenix Forging Company ("Phoenix") was injured at work. The precise circumstances sur-

rounding this injury are hotly contested, but it is undisputed that plaintiff somehow activated a foot-switch connected to a drop-hammer forging machine causing the ram of the machine to descend on plaintiff's hand. Plaintiff was severely injured as a result.

Plaintiff sued the manufacturer of the forging machine in question, the manufacturer of the foot switch in question, and the supplier of the foot switch under a strict liability theory premised upon Section 402A of the Restatement (Second) of Torts. Plaintiff also sued NATLCO under a negligence theory. He alleges that NATLCO undertook to perform safety inspections of the Phoenix plant, that it did not exercise reasonable care in the performance of those inspections, and that he suffered injuries as a result of that negligence.

It is uncontested that NATLCO did, in fact, enter into some form of contract with the parent corporation of Phoenix. It is also uncontested that pursuant to this contract, NATLCO conducted a number of inspections of the Phoenix plant and made recommendations concerning safety improvements. The parties dispute most of the other aspects of NATLCO's relationship to Phoenix.

The question presented in the present motion is whether plaintiff can proceed against NATLCO under Section 324A of the Restatement (Second) of Torts given the undisputed facts of this case. All parties apparently agree that Pennsylvania law should govern.

Under the Federal Rules of Civil Procedure, summary judgment is appropriate only where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden is on the party seeking summary judgment to prove that no genuine issue of fact exists. For the purposes of considering such a motion, all questions of fact are resolved against the movant.

*Discussion*

■ Plaintiff is relying on what is sometimes known as the "good samaritan rule" in his action against NATLCO. The foun-

dation of the rule is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently. *Patentas v. United States,* 687 F.2d 707, 716 (3rd Cir.1982). Pennsylvania courts have recently adopted the statement of this rule contained in section 324A of the Restatement (Second) of Torts, *Cantwell v. Allegheny County, Pa.,* 483 A.2d 1350 (1984), although it was clear that the rule was part of the law of the Commonwealth long before that. *See Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961). Section 324A provides:

§ 324A. Liability to Third Person for
Negligent Performance of
Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increased the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

NATLCO argues in this motion that plaintiff cannot prove any of the prerequisites for recovery under Section 324A. Specifically, it argues that the services it performed were not sufficient to bring its activities within this section and that, in any event, it performed its duty with reasonable care. NATLCO also argues that none of the requisite elements of Section 324A(a) through (c) are present.

■ The threshold issue under § 324A is "whether the party charged undertook a duty to the person for whom the services were performed or to an injured third party." *Blalock v. Syracuse Stamping Co., Inc.,* 584 F.Supp. 454, 456 (E.D.Pa.1984)

(quoting *Evans v. Liberty Mutual Ins. Co.*, 398 F.2d 665 (1968)). It is undisputed that NATLCO performed some services for Phoenix, the question is really whether NATLCO has shown that there are no facts sufficient to establish that "the defendant has undertaken 'to render services to another which he should recognize as necessary for the protection of a third person'." *Cantwell*, 483 A.2d at 1353–54. "This is essentially a requirement of foreseeability." *Id.* The extent of an undertaking is a question of fact. *Blessing v. United States*, 447 F.Supp. 1160, 1188–89 (E.D.Pa. 1978). I have reviewed the existing record in this case carefully. It appears that there exist genuine issues of fact bearing on the nature of the services which preclude the entry of summary judgment. In his deposition, a NATLCO safety inspector stated that his firm was retained to "essentially evaluate the safety program, and identify both strong and weak points in that program and really try to help and assist management in developing a more effective safety program." Santella Deposition at 23–24. This evaluation involved a physical inspection of the plant area. *Id.* at 24.

Thus, it appears that NATLCO undertook to provide services which were recognized as involving safety concerns. Safety concerns, by their nature involve consideration of the well-being and protection of third parties: the employees. It would be disingenous to conclude, as NATLCO suggests, that the performance of a safety evaluation would not foreseeably give rise to concerns regarding the safety and protection of third parties. *See Cantwell*, 483 A.2d at 1353–54.

NATLCO also contends that it is entitled to judgment as a matter of law because it exercised reasonable care in performing its services. Obviously, the scope of the undertaking defines the requisite standard of care. *Patentas*, 687 F.2d at 716. There is evidence on the present record from which a jury could conclude that the alleged negligence of NATLCO was a proximate cause of plaintiff's injury. In his deposition Santella stated that he inspected the machines in question. He also stated that he looked for and observed guards on the foot switches that operated the forging machines. Santella Deposition at 50–54. It therefore appears that there exists enough material in the record to allow a jury to conclude that NATLCO's negligence in identifying the dangerous foot switches could have been a proximate cause of plaintiff's injury.

■ In order to prevail under § 324A, a plaintiff must establish more than the fact that a defendant negligently performed a duty owed to another which he or she should have forseen as necessary to the safety of another. The plaintiff must also show that the requirements of one of the subsections of § 324A have been met. NATLCO argues that plaintiff cannot proceed under any of these provisions.

■ Subsection (a) requires that the activities of the defendant must have somehow increased the risk of harm to the plaintiff. It is well-settled that under § 324A negligent inspection does not meet the requirements of § 324A(a). *See e.g. Canipe v. National Loss Control Service Corp.*, 736 F.2d 1055, 1062 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985); *Patentas*, 687 F.2d at 717; *Raymer v. United States*, 660 F.2d 1136, 1143 (6th Cir.1981); *Davis v. Liberty Mutual Insurance Co.*, 525 F.2d 1204, 1207 (5th Cir.1976).

NATLCO argues forcefully that it did not undertake to perform any duty owed to plaintiff by Phoenix which is the touchstone of liability under subsection (b) of § 324A. *See* Rutter Affidavit ¶ 7; Walsh Affidavit ¶ 7. Defendant's contention in this regard is essentially that because Phoenix did not relinquish its own in-house safety programs, the requirements of § 324A(b) have not been met. Although the factual predicates of the argument are undisputed—Phoenix did not abandon its own safety efforts after retaining NATLCO—the argument made by NATLCO presents a close question of law over which the courts have divided.

There are a number of cases which accept the argument advanced by defendant herein. These cases read subsection (b) as requiring that a defendant undertake "not merely to *supplement* the employers' own safety inspections, but rather to *supplant* those inspections," *Blessing,* 447 F.Supp. at 1194 (emphasis in original). Under this reading of subsection (b), a defendant would have to "perform tasks on *behalf* of another and *in lieu* of that other" in order to be liable. *Id.* (emphasis in original). *Accord Davis v. Liberty Mutual Ins. Co.,* 525 F.2d 1204 (5th Cir.1976); *Tillman v. Travelers Indemnity Co.,* 506 F.2d 917 (5th Cir.1975).

■ There are, however, a number of cases which adopt an alternate interpretation of subsection (b). These cases hold that the requirements of this subsection have been met when "the party who owes the plaintiff a duty of care has delegated to the defendant any particular part of that duty." *Canipe,* 736 F.2d at 1062–63. *See also Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961).[1]

The correct approach to this issue seems to lie between these two positions. The touchstone of § 324A is that the defendant has undertaken some service for another party which is of a nature to give rise to a duty on the part of the actor to use reasonable care. *See Evans v. Otis Elevator Co.,* 168 A.2d at 575–76. In order for such a duty to arise, one does not have to assume the entire responsibility of another party. Employers have the duty to provide safe workplaces for their employees. This duty includes providing light, air, and heat for their workers. It also includes providing a workplace that is not dangerous and the provision of safe tools. This duty could never, in reality, be fully delegated and

assumed by another party; the duty is too broad. To accept the interpretation of subsection (b) urged by NATLCO would be tantamount to holding that liability for an on-the-job injury could never be imposed on a non-employer based on § 324A.

I do not imply, however, that any type of contractual relationship could form the basis of liability under § 324A. In order for subsection (b) to apply to any given situation, the relationship involved must be one that has given rise to a duty to use reasonable care. In the instant case, Phoenix retained NATLCO to perform safety evaluations and to advise it on safety-related matters. In performing its functions, NATLCO inspected the plant and its machinery in light of various applicable safety standards. Santella Deposition at 27, 28. It then recommended certain changes in the plant and its operation. Phoenix apparently implemented at least some of those changes. It would be difficult to interpret the relationship between Phoenix and NATLCO as not giving rise to a duty on NATLCO's part to exercise reasonable care. Phoenix did, in fact, delegate some portion of their concern for safety to NATLCO; to conclude otherwise would force the conclusion that Phoenix paid for services for which it had no need and which it did not use. I refuse to reach this conclusion. Based on the available record, I cannot say that plaintiff cannot prove that NATLCO is liable under subsection (b) as a matter of law.

Because I have concluded that plaintiff has stated a valid claim under subsection (b), I need not address defendant's arguments regarding plaintiff's claim under subsection (c).

---

**1.** It is interesting to note that both *Blessing* and *Canipe* rely on the same cases in order to reach diametrically opposed conclusions. Both rely on *Davis v. Liberty Mutual Ins. Co.,* 525 F.2d 1204 (5th Cir.1976) and *Tillman v. Travelers Indemnity Co.,* 506 F.2d 917 (5th Cir.1975). Both *Davis* and *Tillman* are Fifth Circuit cases which predate *Canipe,* another Fifth Circuit case. I have concluded based on my reading of *Davis* and *Tillman* that *Canipe's* reading of them

is more clearly correct. Moreover, *Canipe* could be interpreted as repudiating the basis of both *Davis* and *Tillman,* if one assumes the correctness of the *Blessing* reading.

*Blessing* also involved a factual situation very different than that presented here in that the plaintiff therein sought to impose liability upon the United States based on an allegedly negligent inspection conducted by members of the Occupational Safety and Health Administration.

Defendant has placed great reliance on *Blalock v. Syracuse Stamping*, 584 F.Supp. 454 (E.D.Pa.1984). I think, however, that the facts of that case render it inapplicable to the case presently before me. In *Blalock*, plaintiff sued his employer's fire insurance carrier alleging that the periodic inspections it conducted were remiss in failing to recommend that the employer limit the amount of a flammable solvent stored in the plant. The insurer did not, however, undertake these inspections for the benefit of the employer, but rather did so in order to attempt to inform its own loss control practices and estimates. *Id.* at 456. The insurer was retained by the employer, not for evaluation of fire and other workplace hazards, but to provide fire insurance. As a result of its inspections, the insurer would occasionally pass-on various recommendations which would be adopted by the employer. *Id.* at 458. The relationship between the employer and the insurer in *Blalock* is, however, very different from that present between Phoenix and NATLCO. Phoenix hired NATLCO explicitly to provide safety and loss control advice and recommendations. These recommendations, and NATLCO's services in general were made in reference to national guidelines and standards, at least some of which had the force of law. *See* Santella deposition at 27, 28.

For the reasons I have stated, I find that plaintiff has raised a genuine issue of material fact sufficient to avoid summary judgment. At the present time, I cannot say that defendant is entitled to judgment as a matter of law.