JONES, Justice.
Laroy Price appeals from a summary judgment in favor of Management Safety, Inc. (MSI). We reverse and remand.
The following factual background of this appeal is taken from the trial court’s pretrial order:
“Management Safety was originally formed in 1978 for the purpose of providing safety services, including on-site consulting services. It is wholly owned by an insurance brokerage firm called Marketing Management, Inc.
“Price’s employer, Allied Products Company, owned an insurance company called Allied Insurance Company, Ltd. Allied Products also had an insurance agency firm called the MMI Agency, Inc. On November 1, 1978, an agreement in writing entitled ‘Insurance Management Agreement’ was executed by Allied Insurance Company with the MMI Agency and Management Safety, under which Management Safety undertook to provide among other services the following:
“ ‘(g) Provide a complete Loss Control & Safety service to risks assumed by Allied, including but not limited to periodic on-site inspections, coordination of divisional safety programs, preparation of management reports concerning hazard control and claims, and furnishing literature and supplies for divisional safety programs as may be deemed necessary by both parties.’
“In return for the services to be provided by Management Safety, Allied Insurance Company agreed to pay it for its services a fee equal to two percent of the premiums written for the account of its affiliates and reinsured by it.
“Charles R. Palmer went to work for Management Safety when it was formed in approximately 1978 and was its Vice President and General Manager. Palmer established a periodic on-site inspection program under which he inspected all locations twice a year. During the period from November 1, 1978, to May 21, 1980, the date when Price sustained the fall and injuries for which he makes claim, Palmer made two inspections of the Allied Products Montevallo quarry and plant; one inspection on June 21, 1979, and the other on January 10, 1980. On both occasions, Palmer was accompanied by Stewart Adams, who was Personnel Director and Safety Director of the lime division of Allied Products.
“On the morning of May 21,1980, Fred Smitherman, an employee of Allied Products, was preparing to eliminate certain coal rings located in the lime kilns by firing or shooting at the rings using an industrial eight gauge shotgun. Smith- *1095 erman was assisted by two other employees, Bill Davis and Rich Gilbert. Smith-erman required approximately twenty cases of shotgun shells with each case weighing approximately 120 pounds. Davis and Gilbert had been assigned the task of bringing the cases of shotgun shells to the burner floor near the lime kilns and decided to do so by lifting out a section of the steel grating and then hoisting the cases of shotgun shells through the opening. They removed three sections of the steel grating, leaving an opening approximately seven feet by eight feet. While Price was walking across the burner floor, he heard a shot which appeared to come from his right. He looked up and to the right, took approximately two more steps and fell through the opening a distance of approximately eighteen feet to the concrete floor underneath.”
Price sued his co-employees for negligent construction and failure to maintain the work premises. Price sued MSI for negligent failure to perform loss control and safety inspection services on the premises of Price’s employer after MSI had contracted to undertake such services. Price and his co-employees reached a settlement agreement after the trial court, in its pretrial order, had entered a nonfinal summary judgment in favor of MSI. The co-employees were dismissed, the summary judgment for MSI became final, and Price now appeals from that summary judgment.
Because this appeal challenges the propriety of a summary judgment, we test the evidence to determine whether there exists any issue of material fact from which a jury could infer that MSI knew or should have known of the safety hazard which existed when the removable portions of the burner’s steel grate floor were removed and the opening was left unguarded. Griffin v. Little, 451 So.2d 284 (Ala.1984); Garrigan v. Hinton Beef & Provision Co., 425 So.2d 1091 (Ala.1983). Furthermore, we are guided in this determination by the long standing rule in Alabama that we view the evidence in a light most favorable to Price and, if Price’s position is supported by the evidence or any reasonable inference therefrom, this factual question must go to the jury. Griffin v. Little, supra; Ex parte Bagby Elevator & Electric Co., 383 So.2d 173 (Ala.1980).
A chronology of the highlights of the events leading up to this action is helpful to an understanding of our holding:
1978 - MSI is founded with Charles Palmer as its Vice President and General Manager.
July 3,1978 - Accident occurs at Allied’s Montevallo plant involving employee Davis. Guard rails are placed around the portions of removable grating.
November 1,1978 - The MMI/MSI/Allied “Insurance Management Agreement” executed.
- An ice storm collapses the roof at Allied’s Montevallo plant. The guard rails around the removable grating sections are not replaced. Late 1978-early 1979
- Adams hired by Allied. March 5,1979
- Palmer inquires of Adams as to Allied’s past safety history and is given several reports, which he discusses with Adams. Mid-1979
- Palmer conducts his first inspection of the Montevallo plant, accompanied by Adams. The removable portions of the burner floor are in place. June 21,1979
- Palmer conducts his second inspection of the Montevallo plant, accompanied by Adams. The removable portions of the burner floor are in place. January 10,1980 Approximately
-Priceis hired by Allied. April 21,1980
- Price is injured by falling through opening in burner floor. May 21,1980
Charles Palmer, through his deposition and affidavits in support of MSI’s motion for summary judgment, testified that the steel grating of the burner floor was all in place during both of his inspections of the Montevallo plant and that he was not *1096 aware that sections of the grating could be removed or that Allied employees used the opening made by removing the sections to transfer objects from one level of the burner to another. Palmer stated that Allied had never requested recommendations from him with regard to the removable grating sections and that in his “general discussions with the company it was pointed out at all times that openings in which people could fall into should be guarded in some appropriate manner.” Palmer made a written report to Allied containing his reasons for correcting safety hazards he had noted during his two inspections of the Montevallo plant.
With regard to events occurring prior to the time when his company assumed any safety responsibilities to Allied, Palmer testified that he inquired of Adams as to past accidents and claims at the Montevallo plant and that he requested to see Allied’s records on past accidents. Palmer claims that as a result he was shown a few Mine Safety Health Administration (MSHA) reports of past accidents and that he discussed these reports with Adams, but that he never was shown an accident report on Davis’s earlier fall through the same opening that Price had fallen through. Palmer further testified that his first knowledge of Davis’s fall came at his own deposition in this case.
Stewart Adams testified that very poor safety and accident report records were kept at Allied prior to his employment and that he began to keep and file MSHA reports in September of 1979. Like Palmer, Adams claimed that he did not know of the removability of the steel grating until after Price's accident. He stated that he had never known the details of Davis’s accident nor had he seen a MSHA report on that accident until his deposition. According to Adams, although MSHA made frequent inspections of Allied’s Montevallo plant, no one from MSHA ever discussed with Adams the opening that could be made in the burner floor.
Roger Dunlap, assistant general superintendent of Allied’s Montevallo plant, testified that he was aware that Davis had had an accident at the plant but that he did not know until after Price’s accident that Davis had fallen through the same opening that Price had fallen through.
In opposition to MSI’s motion for summary judgment, Price filed a “Safety Analysis and Opinion” compiled by Price’s expert, Luther Fleming, a “certified safety professional.” This evidence, however, “must be more than a mere verification of the allegations contained in [Price’s] pleadings, and must present facts which would be admissible into evidence.” Whatley v. Cardinal Pest Control, 388 So.2d 529, 532 (Ala.1980). The evidence offered in opposition to MSI's motion for summary judgment, then, must sufficiently contradict the facts presented by MSI in support of its motion so as to provide at least an inference of negligence on the part of MSI. In the absence of such contradictory facts, the trial court must consider the evidence in support of the motion to be uncontroverted and must, therefore, enter summary judgment for the movant. See Day v. Merchants National Bank of Mobile, 431 So.2d 1254 (Ala.1983); Thompson v. Lee, 439 So.2d 113 (Ala.1983); Butler v. Michigan Mutual Insurance Company, 402 So.2d 949 (Ala.1981).
Fleming’s report, coupled with MSI’s obligation to inspect, does provide the requisite controverting evidence which would create a question of material fact for determination by a jury. The report details the physical means by which the steel grating of the burner floor is removed and notes that neither is there a warning signal given when the opening is created nor a guard rail placed around the opening. The report recites the federal regulations requiring that Allied warn workers of and protect them from the hazard of openings near “travelways” and then states:
“One of the first things that MSI should have done when the agreement was signed with Allied was to obtain copies of all their accident reports and the MSHA safety inspection reports for the previous three years, and make an *1097 immediate analysis of the causes of the accidents to determine the corrective actions that should be taken.
“The next move would be to become knowledgeable of the hazards associated with the several job classifications. This should have been done by observing the employees on all shifts in all areas in the plant as they went about their daily operations, making a job safety analysis to identify the many different hazards, not by asking the Personnel and Safety Director how he thought the job was being done.”
Clearly, the information set out in Fleming’s report was both admissible and, rather than simply verifying Price’s pleadings, created a factual controversy as to what MSI should have known and what action it should have taken with regard to the hazards at Allied’s Montevallo plant.[1] The resolution of this question involves the fact-finding prerogative which is reserved to a jury; the trial court was in error in concluding that no evidence was proffered by Price to create a factual issue. Whether, under the facts now before us, MSI was or was not negligent in fulfilling its duty to Allied and, hence, to Price, is an issue of fact for the jury and may not he preempted by the trial court’s entry of summary judgment.
We find that Price, through the report of his expert, under the totality of the circumstances, met his burden of presenting contradictory admissible evidence to provide at least an inference of negligence in MSI and that summary judgment was inappropriate. The evidence from which the fact of negligence may have been inferred by the jury is to the effect that MSI, in the discharge of its obligation to inspect, should have obtained prior reports reflecting the accident history of the plant and should have made thorough inspections of prior accident sites, rather than relying upon hearsay information from Allied’s supervisory employees.
The judgment appealed from, therefore, is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
MADDOX, FAULKNER, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.

. Federal safety regulations for plants such as Allied’s Montevallo operation (placed into evidence in this case by the report of Price’s expert in opposition to MSI’s motion for summary judgment) are “for the jury to consider in determining whether a defendant was negligent or not,” and we have written of them: "These safety rules were promulgated by an agency of the United States Government. Under proper circumstances Occupational Safety and Health Act provisions and regulations may be admissible for a jury to consider in determining the standard of care that a defendant should have followed, if properly introduced in accordance with the requirements of [City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264 (1939)].” Knight v. Burns, Kirkley & Williams Construction Co., 331 So.2d 651, 654 (Ala.1976).