Filed 7/30/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| OSCAR PEREDIA et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>HR MOBILE SERVICES, INC.,<br><br>    Defendant and Respondent. | F074083<br><br>(Super. Ct. No. 13CECG03137)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark Wood Snauffer, Judge.

Law Offices of Tony J. Tanke, Tony J. Tanke; Law Offices of Gary L. Simms and Gary L. Simms; Law Office of Scott Righthand, Scott D. Righthand and Brittany Rogers, for Plaintiffs and Appellants.

Farbstein & Blackman, Michael A. Farbstein and Ramsey F. Kawar for Defendant and Respondent.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV. of the Discussion.

This appeal addresses the circumstances under which a safety consultant retained by a California employer owes a duty of care to the employer's workers. California recognizes the common law theory of negligent undertaking, which is described in section 324A of the Restatement Second of Torts (section 324A). Our Supreme Court set forth the five elements of a negligent undertaking cause of action in *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604 (*Artiglio*), three of which are related to the duty of care. Our Supreme Court has not applied these elements to a safety consultant.

Here, the trial court granted summary judgment to the safety consultant on the ground the consultant owed no duty of care to the employees because the consultant's allegedly negligent omissions were not affirmative misfeasance and, therefore, were not acts "wrongful in their nature" for purposes of Civil Code section 2343. We interpret the phrase "wrongful in their nature" as encompassing conduct that is tortious—that is, a civil wrong. Consequently, if plaintiffs are able to prove all of the elements of their negligent undertaking cause of action, they will have established the consultant's acts constituted a tort and, thus, were "wrongful in their nature." In that situation, their claim will not be precluded by Civil Code section 2343. Under this statutory interpretation, agents are responsible for their independent torts, but are not held vicariously liable for the torts of their principal.

As to the elements of the negligent undertaking cause of action, we conclude there are triable issues of material fact as to (1) the precise scope of the consultant's undertaking and of the duty that may have arisen from the undertaking, (2) whether the consultant breached that duty, and (3) whether the breach caused the death of plaintiffs' son.

We therefore reverse the summary judgment and remand for further proceedings.

**FACTS**

Plaintiffs Oscar and Laura Peredia are the parents of Oscar Peredia, Jr., who was 19 years old on September 20, 2012, when he was killed while working at Double

2.

Diamond's dairy. When Oscar Jr. was sweeping the feed slab that morning, he was hit by the front-end loader on a John Deere tractor, knocked down, and run over by the right front wheel of the tractor.

Double Diamond began its dairy business in 1998. At the time of the incident, the dairy occupied 220 acres, had approximately 4,800 milking cows, a total of 9,500 animals, and about 50 employees. Approximately 3,000 acres of farmland support the dairy, and Double Diamond's farming operations employ another 20 workers.

Around May 2012, Double Diamond engaged defendant HR Mobile Services, Inc. (HR Mobile) to assist it with human resources, training, loss prevention, and workers' compensation issues. The contractual relationship between Double Diamond and HR Mobile was established by a handshake and was not set forth in a written document signed by the parties. Double Diamond paid HR Mobile $24,000 per year for services related to the dairy.

HR Mobile acknowledges it agreed to assist, and did assist, Double Diamond in carrying out its workplace safety obligations, but asserts it did not agree to fully assume Double Diamond's workplace safety obligations to the employees working at the dairy. Plaintiffs contend the extent of HR Mobile obligations presents an issue of fact that is disputed. In HR Mobile's view, it agreed to and accepted a secondary role with respect to quarterly safety meetings, quarterly site safety inspections, accident investigations, and safety training, while Double Diamond remained responsible for compliance with safety, site safety inspections, correcting hazards, safety training and record keeping.

HR Mobile supplied Double Diamond with several new human resources documents, including employee safety policy documents. HR Mobile requested Boretti, Inc., one of its vendors, to provide a form of injury and illness prevention plan (IIPP). HR Mobile asserts that when it obtained the IIPP from Boretti, Inc., it believed the IIPP complied with California's basic statutory and regulatory requirements for dairy IIPP's and was based on current occupational and health standards and requirements and on

3.

accepted industrial safety and health principles and practices. Plaintiffs contend HR Mobile's belief was not reasonable because, among other things, HR Mobile neglected to analyze the dairy's previous IIPP or the one obtained from Boretti, Inc. to ensure the new IIPP complied with occupational and health standards and requirements. Plaintiffs assert the subsequent citations issued by California's Division of Occupational Safety and Health (CalOSHA) establish the IIPP was not compliant.

On August 24, 2012, HR Mobile staff conducted a job site safety inspection at Double Diamond's dairy and also conducted an employee safety training meeting. The worker who was operating the tractor (Driver) that struck Oscar Jr. attended the meeting. The topics covered at the meeting included tractor safety and front-end loader safety. Employees attending the meeting were provided with training materials that included the instruction for equipment operators to always look where they were going.

The September 20, 2012, incident occurred while Driver was using the tractor and loader to move feed ingredients from one location to another at the dairy. Before the day of the incident, Driver had observed workers sweeping gravel from the feed slab at random times approximately two or three times a month and had observed Oscar Jr. working in the feed slab area, cutting rope from bales of hay, sweeping or both. The position of the loader's bucket at the time of the incident may have created a blind spot, which may have obstructed Driver's view for at least 15 to 20 feet in front of the bucket.

The parties dispute whether Driver was paying attention to where he was going when he struck Oscar Jr. and whether Oscar Jr., contrary to Double Diamond's policy, was using earbuds to listen to an electronic device.

### PROCEEDINGS

In 2013, plaintiffs filed a wrongful death and survival action against HR Mobile and others. In April 2014, they filed a first amended complaint alleging negligence claims against HR Mobile. The first amended complaint is the operative pleading in this appeal and, as a result, frames the issues addressed in HR Mobile's motion for summary

4.

judgment. Plaintiffs alleged HR Mobile was negligent in, among other things, (1) failing to design and create a safety program addressing the safety of ground workers in the vicinity of heavy equipment operations, (2) failing to institute a safety program that included use of high visibility clothing for workers at the dairy, (3) failing to educate workers about the dangers of heavy equipment, and (4) inadequate management of its responsibilities as set forth in the IIPP.

In April 2016, HR Mobile moved for summary judgment, asserting plaintiffs' causes of action were devoid of merit because plaintiffs could not establish the duty or causation elements of the underlying negligence claims. The motion also challenged plaintiffs' prayer for punitive damages.

On June 15, 2016, the trial court issued a tentative ruling stating the court intended to grant the motion because "Civil Code section 2343 precludes liability for HR [Mobile] under the circumstances of this case." Following a hearing and arguments from counsel, the court took the matter under submission. Later, the court filed a minute order adopting its tentative ruling.

In July 2016, the court signed and filed a judgment on order granting summary judgment in favor of HR Mobile. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### I. BASIC LEGAL PRINCIPLES

#### A. Standard of Review

Appellate courts independently review a grant of summary judgment to determine whether there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (c).) The independent standard of review also applies to the issue of statutory construction presented in this appeal, which is a question of law. (*Brown v. Superior Court* (2018) 19 Cal.App.5th 1208, 1218.)

5.

B.      Negligence

      1.      *Elements of a Claim*

The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages. (*Artiglio, supra,* 18 Cal.4th at p. 614.) Here, HR Mobile's motion for summary judgment asserted plaintiffs could not establish the elements of duty or causation.

      2.      *Negligent Undertaking*

California recognizes a legal duty of care in certain circumstances where the defendant undertakes to render services to someone other than the plaintiff. This "negligent undertaking" theory of liability is set forth in section 324A. In *Artiglio*, our Supreme Court stated that "California courts, including this court, have long recognized section 324A's negligent undertaking theory, the general viability of which is not at issue." (*Artiglio*, *supra*, 18 Cal.4th at pp. 607-608; see *Paz v. State of California* (2000) 22 Cal.4th 550, 559; CACI No. 450C [negligent undertaking].) In *Artiglio*, the plaintiffs alleged injury from silicone breast implants and sued the defendant corporations for negligently discharging an undertaking to provide silicone toxicology research to their subsidiary, the manufacturer of the implants. (*Artiglio, supra,* at p. 608.) The Supreme Court upheld the grant of summary judgment for the defendant corporations on the ground that "any risk of physical harm to plaintiffs from negligent performance of that undertaking was unforeseeable." (*Ibid.*) *Artiglio* is significant to the instant appeal because of its discussion of the negligent undertaking theory of liability and section 324A. As quoted by the Supreme Court, section 324A provides in its entirety:

> "'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered

6.

because of reliance of the other or the third person upon the undertaking.'" (*Artiglio*, *supra*, 18 Cal.4th at pp. 612-613, fn. omitted.)

After discussing some case law related to section 324A and the Good Samaritan rule, the Supreme Court set forth the elements of a negligent undertaking cause of action that are applicable in this case. We have modified that statement by replacing the names of the parties in that case with the names of the entities in this appeal:

> "As the traditional theory is articulated in the Restatement, a negligent undertaking claim of liability to third parties requires evidence that: (1) the actor (in this case, [HR Mobile]) undertook, gratuitously or for consideration, to render services to another ([Double Diamond]); (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons ([the employees of Double Diamond]); (3) the actor failed to exercise reasonable care in the performance of its undertaking; (4) the failure to exercise reasonable care resulted in physical harm to the third persons; and (5) either (a) the actor's carelessness increased the risk of such harm, or (b) the undertaking was to perform a duty owed by the other to the third persons, or (c) the harm was suffered because of the reliance of the other or the third persons upon the undertaking." (*Artiglio*, *supra*, 18 Cal.4th at pp. 613-614.)

Based on this description of the elements of a negligent undertaking claim, plaintiffs contend HR Mobile owed a duty of care to the deceased on two grounds. First, HR Mobile undertook to perform safety duties that Double Diamond owed to its employees. Second, Double Diamond relied on HR Mobiles' safety program and IIPP and, thus, did not consider or implement further safety measures.

### 3. Case Law Involving Inspectors and Safety Consultants

Generally, cases in which negligence claims are pursued against entities performing safety inspections or other safety-related services for the injured worker's employer involve at least five types of defendants. The type of defendant of interest here is the safety consultant because HR Mobile acted in that capacity. The other types of

defendants include (1) insurance companies,[1] (2) parent corporations,[2] (3) engineering firms,[3] and (4) governmental entities.[4]

The California Supreme Court has not specifically addressed the application of the negligent undertaking theory of liability to a safety consultant. However, other state supreme courts have. For example, the Arkansas Supreme Court considered "whether an independent safety inspection company owes a duty of care to a third-party employee." (*Wilson v. Rebsamen Insurance, Inc.* (1997) 330 Ark. 687, 696 [957 S.W.2d 678] (*Wilson*).) The court noted the question was "an issue of first impression in Arkansas" and provided the following description of how other courts had dealt with the issue:

---

[1]  In *Hutcherson v. Progressive Corporation* (11th Cir. 1993) 984 F.2d 1152, a summary judgment for an insurance company was reversed. In *Derosia v. Liberty Mut. Ins. Co.* (1990) 155 Vt. 178 [583 A.2d 881], a jury verdict against an insurance company was affirmed. In *Pratt v. Liberty Mutual Ins. Co.* (2d Cir. 1992) 952 F.2d 667, the court reversed a directed verdict for the employer's workers' compensation carrier, which allegedly undertook to conduct an active loss-prevention program at the facilities of the plaintiff's employer.

[2]  In *Miller v. Bristol-Myers Co.* (1992) 168 Wis.2d 863 [485 N.W.2d 31], Wisconsin's Supreme Court reversed a summary judgment granted to a parent corporation, concluding the parent corporation had acted in such a manner as to assume a common law duty of care to its subsidiary's employees. In *Johnson v. Abbe Engineering Co.* (5th Cir. 1984) 749 F.2d 1131, the court upheld a jury verdict against a parent company that inspected a plant where the plaintiff was injured. In contrast, Louisiana's Supreme Court reversed a jury's award in favor of injured workers, concluding the evidence presented did not establish for purposes of section 324A that the parent company affirmatively undertook to provide its subsidiary's employees with a reasonably safe place to work. (*Bujol v. Entergy Services, Inc.* (La. 2004) 922 So.2d 1113, 1133, 1138 (*Bujol*).)

[3]  In *McDonnell v. Wasenmiller* (8th Cir. 1934) 74 F.2d 320, the court upheld a judgment against a civil engineer whose firm actively supervised installation of heating units. (*Id*. at p. 326.)

[4]  In *Irving v. United States* (1st Cir. 1998) 162 F.3d 154, an injured factory worker unsuccessfully claimed inspectors employed by Occupational Safety and Health Administration negligently performed their duties.

"Other jurisdictions have consistently held that pursuant to section (b) of Restatement 324A an independent consulting firm that agrees to perform safety inspections of an employer's work place owes a duty of care to a third-party employee to perform those inspections with reasonable care. *Canipe v. National Loss Control Serv. Inc.*, 736 F.2d 1055 (5th Cir.1984); *Santillo v. Chambersburg Eng'g Co.*, 603 F.Supp. 211 (E.D.Pa. 1985), *aff'd* 802 F.2d 44[8] (3rd Cir. 1986); *see also Price v. Management Safety Inc.*, 485 So.2d 1093 (Ala.1986) (imposing a duty without mentioning Restatement § 324A); *Gallichio v. Corporate Group Serv. Inc.*, 227 So.2d 519 (Fla.App.1969) (finding a duty of care under contract law). These jurisdictions reason that the safety consultant owes a duty of care under Restatement § 324A(b) because it is reasonably foreseeable that if the inspections are done improperly, a third-party employee will be injured. *See Santillo*, *supra*; *Gallichio*, *supra*.

"Moreover, the facts of the cases in which other courts have imposed a duty of care are virtually identical to the facts at hand. For example, in *Santillo*, an employer hired NATLCO, an independent consulting firm, to perform safety inspections of its plant and make recommendations concerning safety improvements. *Santillo*, *supra*. Although it appears that NATLCO did not have the authority to implement the safety improvements it recommended, the Pennsylvania court held that pursuant to section (b) of Restatement 324A, NATLCO owed a duty of care to an employee who was injured as a result of NATLCO's allegedly negligent inspection of a piece of machinery. *Santillo*, *supra*." (*Wilson*, *supra*, 957 S.W.2d at pp. 681-682.)

Ultimately, the Arkansas Supreme Court concluded "that pursuant to section (b) of the Restatement (Second) of Torts § 324A, [the safety inspection company and its vice president in charge of the inspection] owed [the injured worker] a duty of care in connection with their undertaking to inspect the premises and warn [the employer] Arkansas Oak Flooring about any detected safety hazards." (*Wilson*, *supra*, 957 S.W.2d at p. 683.) Accordingly, the court reversed the summary judgment granted to the safety inspection company. (*Ibid*.)

*Santillo v. Chambersburg Engineering Co.* (E.D.Pa. 1985) 603 F.Supp. 211 (*Santillo*), also involved a safety consultant. *Santillo* is significant to us because it was discussed by the Arkansas Supreme Court, has been cited the parties in their appellate

9.

briefs, and was cited twice by our Supreme Court in *Artiglio*. The second and most detailed citation read: "(Cf. *Santillo v. Chambersburg Engineering Co.*, *supra*, 603 F.Supp. at p. 214 [defendant provided safety inspections of an employer's physical plant; court noted '[s]afety concerns by their nature involve consideration of the well-being and protection of third parties: the employees'].)" (*Artiglio*, *supra*, 18 Cal.4th at p. 615.) This citation by the Supreme Court refers to (and provides guidance on) the second of the five elements articulated in *Artiglio* for a negligent undertaking cause of action—that is, whether "(2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons." (*Id.* at p. 614.)

### 4. *Summary of the Elements of the Negligent Undertaking Claim*

Based on *Artiglio*, section 324A and the case law from other jurisdictions, we reach the following legal conclusions. A safety consultant is liable to an employee of the firm that hired the safety consultant when the employee establishes the elements of a negligent undertaking claim set forth by our Supreme Court in *Artiglio*. Therefore, to establish a negligent undertaking cause of action against HR Mobile, plaintiffs must establish that (1) HR Mobile undertook to render services to Double Diamond; (2) the services rendered were of a kind HR Mobile should have recognized as necessary for the protection of the employees of Double Diamond; (3) HR Mobile failed to exercise reasonable care in the performance of its undertaking; (4) the failure to exercise reasonable care resulted in physical harm to Oscar Jr.; and (5) either (a) HR Mobile's carelessness increased the risk of such harm, or (b) the undertaking was to perform a duty owed by Double Diamond to the employees, or (c) the harm was suffered because of the reliance of Double Diamond or the employees upon the undertaking. (*Artiglio*, *supra*, 18 Cal.4th at pp. 613-614.) Under this formulation, a duty of care exists when the first, second and fifth elements are established. The third element addresses the breach of that duty of care and the fourth element covers both causation and damages.

II.    CIVIL CODE SECTION 2343

Before we consider the application of the first, second and fifth elements to the facts asserted and evidence presented, we consider whether Civil Code section 2343 compels the conclusion that HR Mobile owed no duty of care to Double Diamond's employees. This question requires us to construe Civil Code section 2343 and apply that statutory construction to the facts presented. When the trial court undertook these steps, it concluded "Civil Code section 2343 precludes liability of HR [Mobile] under the circumstances of this case" and granted the motion for summary judgment on that ground.

A.    Meaning of the Statute

1.    *Statutory Text*

Civil Code section 2343 provides: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, *and in no others*: [¶] … [¶] When his acts are *wrongful* in their nature." (Italics added.) The italicized text was significant to the trial court's analysis. The court concluded the phrase "and in no others" has a preclusive effect—that is, the statute operates to limit the liability of agents to the situations specifically listed in the statute. In addition, the court interpreted the term "wrongful" to mean affirmative misfeasance. Applying this interpretation, the court concluded HR Mobile's passive failure to identify and correct dangerous working conditions at the dairy was not "wrongful" and, therefore, HR Mobile had no responsibility (i.e., owed no duty of care) to the third persons who worked at the dairy.

2.    *Acts Wrongful in Their Nature*

The foundation for our analysis of the meaning of Civil Code section 2343 is provided by three basic rules addressing the liability of principals and agents to third parties. First, a principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the

11.

agency. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 513; see 3 Witkin, Summary of Cal. Law (11th ed. 2017) Agency and Employment, § 175 [principal liability for agent's tort where agent alone is at fault].) Second, an agent is liable for his or her own torts, whether the principal is liable or not, and in spite of the fact that the agent acted in accordance with the principal's directions. (*Holt v. Booth* (1991) 1 Cal.App.4th 1074, 1080, fn. 5; 3 Witkin, Summary of Cal. Law, *supra*, § 210 [liability of agent for torts].) Stated another way, the fact that the principal becomes liable under the rules of vicarious liability or otherwise does not exonerate an agent from liability for a tortious act committed by the agent while acting under the authority of the principal. (*Bayuk v. Edson* (1965) 236 Cal.App.2d 309, 320.) Third, in contrast to the vicarious liability of principals, agents are not vicariously liable for the torts of their principals. (*Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 480 (*Kurtin*); 3 Witkin, Summary of Cal. Law, *supra*, § 212 [innocent agent ordinarily is not liable for the principal's tort].)

The meaning of Civil Code section 2343's clause referring to acts "wrongful in their nature" was addressed in *Kurtin*. In that court's view, the clause reflects the rule that agents are not liable for the torts of their principals and, furthermore, codifies the rule that agents *are* responsible for their *own* independent torts committed during the course of their agency. (*Kurtin*, *supra*, 215 Cal.App.4th at p. 480.) For instance, when an attorney commits fraud in dealing with a third party, the fact the attorney acted as the agent of a client does not relieve the attorney of liability. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 69 (*Shafer*).) Under the views expressed in *Kurtin* and *Shafer*, acts are "wrongful in their nature" if they constitute an independent tort, which is the equivalent of interpreting "wrongful" as encompassing tortious acts.

### 3. *Meaning of "Wrong" and "Wrongful" in Other Contexts*

In other contexts, court have used the terms "wrong" and "wrongful" to describe torts. For example, it is well established that the word "tort" means a *civil wrong*, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 286; *Stephen K. v. Roni L.* (1980) 105 Cal.App.3d 640, 642; see *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189 [court referred to "wrongful conduct forming the foundation for Plaintiffs' negligence claim"].) This definition of "tort" logically implies that when all the elements of a tort cause of action have been established, the defendant's conduct is "wrongful" for purposes of civil law.

In addition, former Code of Civil Procedure section 377—a wrongful death statute—used the term "wrongful" in referring "to the 'death of a person caused by the wrongful act or neglect of another.'" (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1191.) As to the meaning of the phrase "wrongful act or neglect," the court "conclude[d] that 'neglect' is a specific word, an example of one kind of 'wrongful act.' Thus, the term 'wrongful act' must define a class of behavior, of which 'neglect' is a member." (*Ibid*.) The court noted "'wrongful act' has been defined in other cases as meaning simply any tortious conduct, i.e., any act for which the defendant may be liable in tort." (*Ibid*.) As a result, the court concluded "that 'wrongful act' as used in [former] section 377 means any kind of tortious act, including the tortious act of placing defective products into the stream of commerce." (*Ibid*.)

In the context of a claim for intentional interference with prospective economic advantage, our Supreme Court has stated the plaintiff must "prove that the interference was wrongful, independent of its interfering character." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944.) "'[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" (*Ibid*.) The commission of a tort violates a legal

13.

standard established by common law and, thus, is an independent wrong under this definition.

Also, the term "wrong" appears in the codified maxim of jurisprudence that "[f]or every wrong there is a remedy." (Civ. Code, § 3523.) Courts have interpreted this use of the term "wrong" to mean legal wrongs or those wrongs for which the law authorizes or sanctions redress, such as a tort. (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1526-1527.) Thus, the maxim does not "provide remedies for every 'wrong' in the moral sense." (*Id.* at p. 1527.)

The foregoing approaches to the meaning of the term "wrong" is compatible with the view that tortious conduct is wrongful. Based on *Kurtin*, *Shafer*, and the way "wrong" and "wrongful" are used in other contexts, we conclude "acts are wrongful in their nature" for purposes of Civil Code section 2343 when they constitute an independent tort, such as the tort of negligent undertaking. Under this interpretation of Civil Code section 2343, agents are protected from vicarious liability for the torts of their principals, but are held responsible for their own actions that constitute a tort, such as the negligent undertaking tort recognized in California.

### 4. Defining "Wrongful" as Affirmative Misfeasance

The trial court relied on *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52 (*Ruiz*), when it interpreted Civil Code section 2343's phrase "wrongful in their nature" to mean affirmative misfeasance. In *Ruiz*, the Fourth District stated:

> "[Civil Code section 2343] provides that an agent is liable to third persons for wrongful acts taken in the course of the agency. (Civ. Code, § 2343, subd. (3).) However, the statute only makes an agent liable for affirmative misfeasance; it does not render an agent liable to third parties *for the failure to perform duties owed to his principal. (Mears v. Crocker Nat. Bank* (1950) 97 Cal.App.2d 482, 491 [218 P.2d 91].) Thus, Civil Code section 2343 does not make [the contract administrator] liable to the [plaintiff] for any failure to perform its obligations under its contract with [the landowner] to monitor safety at the worksite." (*Ruiz*, *supra*, at p. 65.)

14.

We agree that Civil Code section 2343 does not make an agent liable to third parties for failures to perform duties owed to his principal *so long* as that failure to perform did not breach a duty of care the agent *owed to the third parties*. An example of such a duty of care is the one that exists when the first, second and fifth elements of a negligent undertaking cause of action have been established. In *Ruiz*, the court did not address section 324A and the negligent undertaking cause of action recognized in *Artiglio*. Consequently, it is not authority for the proposition that Civil Code section 2343 operates to restrict liability under that cause of action.

Our interpretation of Civil Code section 2343 is the same as that adopted in *Mears v. Crocker Nat. Bank* (1950) 97 Cal.App.2d 482, the only case cited by the Fourth District to support its "affirmative misfeasance" interpretation. In *Mears*, the court stated: "'Section 2343 recognizes the elementary rule that every one is liable for his torts, and an agent or servant no exception merely because such.' We think the provision cited means that and no more." (*Id.* at p. 491.) We have reached the same conclusion— agents are liable for their torts.

B.      Application of Statutory Interpretation to the Facts

The application of our interpretation of Civil Code section 2343 to the facts of this case is straightforward. If plaintiffs are able to establish the elements of their negligent undertaking cause of action, then they will have established that HR Mobile's conduct was "wrongful" for purposes of the statute and, as a result, the statute allows, rather than bars, their claim. Consequently, the order granting HR Mobile's motion for summary judgment cannot be upheld on the ground that plaintiffs' negligence claims are precluded by Civil Code section 2343. If the order is to be upheld, HR Mobile's moving papers must demonstrate the negligent undertaking cause of action *itself* has no merit. (Code Civ. Proc., § 437c, subd. (p)(2).)

15.

III.   DUTY OF CARE FOR THE NEGLIGENT UNDERTAKING CLAIM

    A.   Burden to Negate an Element

Whether HR Mobile owed a duty of care to the employees at Double Diamond's dairy depends on whether plaintiffs can establish the first, second and fifth elements of a cause of action for negligent undertaking. Under subdivision (p)(2) of Code of Civil Procedure section 437c, a moving party defendant meets its burden of showing a cause of action has no merit by showing "that one or more of the elements of the cause of action … cannot be established." Therefore, HR Mobile can prevail on the ground that it owed no duty of care to Double Diamond's employees by demonstrating plaintiffs cannot establish that one or more of the elements related to duty.

    B.   Contentions

HR Mobile contends its limited consulting role with Double Diamond did not extend to an assumption of Double Diamond's worker safety duties. HR Mobile asserts plaintiffs have grossly overstated the scope of its undertaking when they argued HR Mobile expressly undertook to safeguard and to protect Double Diamond's employees from workplace hazards. HR Mobile contends it never agreed to take control of, or responsibility for, on-the-ground conditions at Double Diamond. HR Mobile contends plaintiffs "disregard uncontroverted evidence that HR Mobile's consulting relationship with Double Diamond was nascent" and it had presented a *preliminary* IIPP that was not fully developed.

Plaintiffs contend HR Mobile has failed to articulate how the scope of its undertaking was limited and, moreover, has failed to set forth any facts showing its undertaking to protect Double Diamond's employees was "clearly limited."

    C.   The Elements Establishing a Duty of Care

        *1.   Review of the Elements*

As stated by our Supreme Court, the first element of a negligent undertaking cause of action requires plaintiffs to prove "(1) the actor (in this case, [HR Mobile]) undertook,

16.

gratuitously or for consideration, to render services to another ([Double Diamond]).” (*Artiglio*, *supra*, 18 Cal.4th at p. 614.) The second element requires plaintiffs to prove “(2) the services rendered were of a kind [HR Mobile] should have recognized as necessary for the protection of third persons ([the employees of Double Diamond]).” (*Ibid.*) The fifth element requires proof that “(5) either (a) the actor’s carelessness increased the risk of such harm, or (b) the undertaking was to perform a duty owed by [Double Diamond] to the [employees], or (c) the harm was suffered because of the reliance of [Double Diamond] or the [employees] upon the undertaking.” (*Ibid.*)

### 2. *The First Element: Undertaking to Render Services*

It is undisputed that HR Mobile undertook, for consideration ($24,000 annually), to render services to Double Diamond related to its dairy operations, despite the absence of a written document signed by them. HR Mobile’s separate statement of undisputed facts asserted it reached an agreement with, and actually rendered services to, Double Diamond, including conducting a site safety inspection and an employee safety training meeting. Thus, HR Mobile has failed to demonstrate plaintiffs cannot establish the first element of a negligent undertaking claim—namely, an undertaking to render services.

### 3. *The Second Element*

HR Mobile’s separate statement of undisputed material fact and its memorandum of points and authorities in support of its motion for summary judgment did not specifically assert that plaintiffs could not establish the second element of a negligent undertaking cause of action. Similarly, HR Mobile’s appellate brief does not argue the element is not present. We address the element here because it provides part of the foundation for discussing the parties’ disputes related to the fifth element.

Undisputed material fact (UMF) No. 6 in HR Mobile’s separate statement of undisputed facts asserts “Double Diamond engaged HR Mobile to assist it with its human resources, training, loss prevention, and workers’ compensation in approximately May of

17.

2012." UMF No. 8 asserts "HR Mobile agreed to assist and did assist Double Diamond in carrying out its workplace safety obligations, but it did not agree to fully assume Double Diamond's workplace safety obligations to Double Diamond employees." UMF No. 9 asserts "HR Mobile agreed to and did accept a secondary role with respect to quarterly safety meetings, quarterly site inspections, accident investigations, and safety training." On August 24, 2012, HR Mobile staff conducted a job site safety inspection and an employee safety training session at Double Diamond. (UMF Nos. 20, 22.)

Plaintiffs disputed some aspects of HR Mobile's description of its agreement with Double Diamond and the acts it performed under that agreement. As to UMF No. 6, plaintiffs assert "HR Mobile was asked to do a safety program and evaluation for Double Diamond Dairy and that included safety inspections of equipment and the site, safety meetings, inspection of the work areas, job specific safety training, and recommendations for safe premises and a safe operation at the dairy." As to UMF No. 8, plaintiffs do not dispute that "HR Mobile agreed to assist and did assist Double Diamond Dairy in carrying out workplace safety on the premises" but assert "the extent of its obligations is an issue of fact and is in dispute[]." As to HR Mobile's assertion its role was secondary, plaintiffs assert there was no discussion of primary versus secondary roles and the extent of HR Mobile's role is an issue of fact.

We conclude UMF Nos. 8 and 9 demonstrate that HR Mobile undertook to assist Double Diamond in carrying out its workplace *safety* obligations and accepted a role (the extent of which is disputed) in conducting *safety* inspections and *safety* training. "Thus, it appears that [HR Mobile] undertook to provide services which were recognized as involving safety concerns." (*Santillo*, *supra*, 603 F.Supp. at p. 214.) Our Supreme Court has quoted the statement in *Santillo* that "'[s]afety concerns by their nature involve consideration of the well-being and protection of third parties: the employees.'" (*Artiglio*, *supra*, 18 Cal.4th at p. 615.) The next sentence in *Santillo* stated: "It would be disingenuous to conclude, as [defendant] suggests, that the performance of a safety

18.

evaluation would not foreseeably give rise to concerns regarding the safety and protection of third parties." (*Santillo*, *supra*, at p. 214.) Based on *Artiglio*, *Santillo* and the undisputed facts, we conclude the safety-related services undertaken by HR Mobile foreseeably related to the safety and protection of Double Diamond's employees. Therefore, HR Mobile has failed to demonstrate plaintiffs cannot establish the second element of a negligent undertaking claim.

### 4. The Fifth Element: Undertaking to Perform a Duty

There are three options for proving the fifth element of the negligent undertaking cause of action. As the three options are joined by the disjunctive "or," plaintiffs need only establish one of the three to satisfy the fifth element. In comparison, HR Mobile, as a moving party defendant, must establish that plaintiffs cannot prove any of the three options if it is to prevail on its motion for summary judgment. Here, we consider the second option: whether HR Mobile's "undertaking was to perform a duty owed by [Double Diamond] to the third persons." (*Artiglio*, *supra*, 18 Cal.4th at p. 614; § 324A(b).)

The first legal issue we consider is raised by HR Mobile's assertion that it did not *fully assume* Double Diamond's safety obligation to the employees working at the dairy. (UMF No. 8.) In effect, HR Mobile has interpreted our Supreme Court's reference to an "undertaking … to perform a duty owed by [Double Diamond] to the third persons" (*Artiglio*, *supra*, 18 Cal.4th at p. 614) to mean a safety consultant must fully assume a duty owed by the employer to its employees before the safety consultant owes a duty of care to the employees.[5] As explained below, we conclude California does not require a full assumption of the employer's duties to provide a safe workplace.

---

**5** As observed by the trial court, California employers have a duty to provide a safe place of employment. Labor Code section 6403 provides in full: "No employer shall fail or neglect to do any of the following: [¶] (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. [¶] (b) To adopt and use methods and processes reasonably adequate to render the

19.

Our analysis of this issue begins by noting the language used by our Supreme Court in *Artiglio* does not explicitly address, one way or the other, whether the defendant must fully assume the employer's duties. In addition, we have located no published opinion of a California appellate court interpreting *Artiglio* or section 324A(b) to require a full assumption of the employer's duties.

Similar to HR Mobile's fully-assumed-duty argument, the consulting firm in *Wilson*, argued it did not owe a duty to third-party employees injured on the job because it had no authority to implement the safety changes it suggested. (*Wilson, supra,* 957 S.W.2d at p. 679.) The Arkansas Supreme Court stated it could not find "any case in which the ability of the safety consultant to implement improvements was a relevant factor in determining whether the consultant owed a duty of care to the injured employee." (*Id*. at p. 682.) In contrast, the court noted *Santillo* and *Canipe v. National Loss Control Serv. Inc.* (5th Cir. 1984) 736 F.2d 1055 (*Canipe*) were cases in which the consultant did not have the authority to implement its safety recommendations, but a duty of care was imposed pursuant to section 324A. (*Wilson, supra,* at pp. 681-682.) Thus, *Wilson* supports the conclusion that a safety consultant need not fully assume the employer's duty to provide a safe workplace.

---

employment and place of employment safe. [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees." In addition, Labor Code section 6401.7 provides that "[e]very employer shall establish, implement and maintain an effective injury prevention program," which shall be in writing and shall include the elements listed in the statute. Among other things, the program must include a "safety training program designed to instruct employees in general safe and healthy work practices and to provide specific instruction with respect to hazards specific to each employee's job assignment." (Lab. Code, § 6401.7, subd. (a)(4).) "The employer shall train all employees when the training program is first established …." (Lab. Code, § 6401.7, subd. (c).) The subject of an "Injury and Illness Prevention Program" also is addressed by California Code of Regulations, title 8, section 3203. The foregoing provisions demonstrate that an employer's general duty to render the place of employment safe encompasses the specific duty of provide employees with safety training.

20.

HR Mobile's contention that it did not fully assume the employer's workplace safety obligations is the practical equivalent of an argument that has created a split in authority about how section 324A(b) should be interpreted. One line of cases requires the defendant's course of action to supplant, not merely supplement, the employer's duty. (E.g., *Ricci v. Quality Bakers of America Co-op. Inc.* (D.Del. 1983) 556 F.Supp. 716, 721 [under § 324A(b), a plaintiff must establish that the one who undertook a duty to inspect supplanted and not merely supplemented another's duty to inspect]; *Heinrich v. Goodyear Tire & Rubber Co.* (D.Md. 1982) 532 F.Supp. 1348, 1355 [under § 324A(b), liability "arises in the workplace setting only if the actor's undertaking was intended to be in lieu of, rather than a supplement to, the employer's own duty of care to the employees"] (*Heinrich*); *Blessing v. United States* (E.D.Pa. 1978) 447 F.Supp. 1160, 1194 [United States would be liable only if, by performing safety inspections, the Occupational Health and Safety Administration "actually undertook not merely to *supplement* the employers' own safety inspections, but rather to *supplant* those inspections"] (*Blessing*); see generally, Crawley, *Environmental Auditing and the "Good Samaritan" Doctrine: Implications for Parent Corporations* (1993) 28 Ga. L.Rev. 223, 243-247.)

In another line of cases, "courts have applied a less stringent standard than the 'in lieu of' of 'supplant rather than supplement' requirement." (Wellington & Camisa, *The Trade Association and Product Safety Standards: Of Good Samaritans and Liability* (1988) 35 Wayne L.Rev. 37, 53.) For instance, in *Canipe*, the Fifth Circuit explicitly rejected a restrictive approach to section 324A(b) and concluded that provision "comes into play as long as the party who owes the plaintiff a duty of care has delegated to the defendant any particular part of that duty." (*Canipe*, *supra*, 736 F.2d at p. 1062.) Stated another way, "liability under section 324A(b) may result if an employer has delegated any part of its duty to discover and remedy unsafe working conditions." (*Canipe*, *supra*, 736 F.2d at p. 1063 [applying Tennessee law]; see *Santillo*, *supra*, 603 F.Supp. at p. 215

[defendant "does not have to assume the entire responsibility of another party" for a duty to arise under § 324A(b)].)

In the context of an independent safety consultant rendering services for compensation, we conclude the appropriate legal standard is set forth in *Canipe*, *Santillo* and *Wilson*. Many of the cases adopting the more stringent legal standard involve other types of defendants, such as parent corporations and governmental entities. (See *Bujol*, *supra*, 922 So.2d at p. 1119 [defendant was employer's parent corporation]; *Heinrich*, *supra*, 532 F.Supp. at p. 1350 [same]; *Blessing*, *supra*, 447 F.Supp. 1194 [defendant was the United States].) Also, our Supreme Court has cited *Santillo* with approval. HR Mobile's appellate brief did not acknowledge the existence of a split of authority described above. As a result, HR Mobile has not presented any reasons explaining why the "supplant rather than supplement" requirement is superior to the interpretation of section 324A(b) adopted in *Canipe*, *Santillo* and *Wilson*.

Based on the foregoing, we conclude plaintiffs are not required to show HR Mobile *fully assumed* Double Diamond's safety obligations to its employees. HR Mobile's moving papers did not adopt a fallback position and present the alternate argument that it had not undertaken *a sufficient part* of Double Diamond's safety responsibilities to its employees. Consequently, we need not discuss that specific question.

Another legal issue raised by HR Mobile's contention that Double Diamond's responsibility to render the place of employment safe for its employees was nondelegable. California's nondelegable duty doctrine is not related to the elements of a negligent undertaking cause of action. Instead, the "doctrine prevents a party that owes a duty to others from evading responsibility by claiming to have delegated that duty to an independent contractor hired to do the necessary work." (*SeaBright Ins. Co. v. US*

*Airways, Inc.* (2011) 52 Cal.4th 590, 600-601.)[6] Therefore, we conclude the nondelegable nature of the duty does not preclude a safety consultant from undertaking to perform duties related to employee safety and, thus, satisfying option (b) of the fifth element identified in section 324A.

In summary, we conclude that HR Mobile, as the moving party defendant, has not shown that the first, second or fifth elements of plaintiffs' negligent undertaking "cause of action … cannot be established." (Code Civ. Proc., § 437c, subd. (p)(2).)

D.    Breach of the Duties Undertaken

HR Mobile suggests that it cannot be held liable because it performed, rather than breached, its undertaking to Double Diamond. This suggestion is related to HR Mobile's argument about the "Clearly Delineated Confines of HR Mobile's Undertakings to Double Diamond."

HR Mobile arguments are connected to the issue of "whether [a defendant's] alleged actions, if proven, would constitute an 'undertaking' sufficient ... to give rise to an actionable duty of care is a legal question for the court." (*Artiglio*, *supra*, 18 Cal.4th at p. 615.) However, "there may be fact questions 'about precisely what it was that the defendant undertook to do.' That is, while '[t]he "precise nature and extent" of [an alleged negligent undertaking] duty "is a question of law ... 'it depends on the nature and extent of the act undertaken, a question of fact.'"" [Citation.] Thus, if the record can support competing inferences [citation], or if the facts are not yet sufficiently developed [citation], '"an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits"' [citation], and summary judgment is precluded. [Citations.]" (*Ibid.*)

---

**6**      Here, Double Diamond has not attempted to evade its responsibility for Oscar Jr.'s death—a responsibility defined by California's workers' compensation law—by claiming it delegated its duty to provide a safe workplace to HR Mobile.

Applying the principles set forth in *Artiglio*, we conclude HR Mobile's moving papers have not established the precise nature and extent of its undertaking and, as a result, it has failed to carry its burden of demonstrating there is no factual question about whether it complied with its undertaking. For example, HR Mobile asserts that (1) the topics covered at the August 24, 2012, safety training meeting included tractor safety, including front-end loader safety, and (2) the training materials disseminated to employees during the meeting included the instruction for equipment operators to always look where they were going. (UMF Nos. 24, 25.) Based on the information provided by HR Mobile's separate statement, we cannot determine the precise nature and extent of HR Mobile's undertaking, which necessarily leads to the conclusion that we cannot determine on the record before us whether HR Mobile fulfilled that undertaking. Accordingly, the HR Mobile's scope-of-undertaking argument does not provide a basis for upholding the grant of summary judgment.

IV.     CAUSATION[*]

A.     Contentions of the Parties

HR Mobile contends plaintiffs have posited "speculative, alternative causation theories with no legal or evidentiary tether." HR Mobile contends the evidentiary deficiencies in the CalOSHA citations and the declarations of plaintiffs' experts render plaintiffs' argument on causation insufficient to raise a triable issue of material fact. In particular, HR Mobile asserts the evidence establishes as indisputable the facts as to the immediate cause of the fatal incident—that Driver was not looking where he was going when he ran over Oscar Jr. HR Mobile argues the theories about a blind spot created by the loader and the lack of reflective clothing "cannot overcome the plain reality that [Driver] was not even looking where he was going."

---

[*]     See footnote, *ante,* page 1.

Plaintiffs contend HR Mobile has not shown why the evidentiary objections it raised in the trial court are relevant to the issue of causation and, in any event, its objections are not properly presented to this court. Plaintiffs further contend that HR Mobile failed to carry its burden as moving party to negate the causation element as a matter of law. Plaintiffs also argue this court need not reach the issue of causation because it was not addressed by the trial court and, as a result, it would be a proper exercise of discretion to remand the issue for a decision by that court.

B.     Immediate Cause Versus the Substantial Factor Test

First, we consider HR Mobile's argument that plaintiffs cannot establish that its alleged negligence caused the fatal incident because Driver's failure to look where he was going was the immediate cause. HR Mobile has not cited any authority for the principle that identifying the person whose negligence was the *immediate* cause of an accident precludes any other party from being held partially responsible for the accident. We conclude the applicable standard for causation in cases where concurrent independent causes contribute to an injury is the "substantial factor" test. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352, fn. 12.)

> "California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations. [Citation.] Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury. [Citations.] The substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968-969.)

Accordingly, we conclude applicable law requires HR Mobile to demonstrate that plaintiffs cannot establish HR Mobile's alleged negligence was a substantial factor in bringing about the death of Oscar Jr. HR Mobile's reliance on Driver being the immediate cause fails to carry this burden as it did not address the correct legal standard

25.

and demonstrate its alleged negligence was not a substantial factor in bringing about the fatal incident.

HR Mobile also argues it is speculative for plaintiffs to claim that the absence of high visibility clothing was a cause of the fatal incident. This argument does not consider the evidence in the light most favorable to the nonmoving party. The evidence presented does not establish that Driver would not have seen Oscar Jr. *at any time before the incident*. During his deposition, Driver testified "I wouldn't have drove that – to that side if I would have knew he was there." Therefore, it is reasonable to infer that if Driver had learned sometime that morning that Oscar Jr. was working on the feed slab, Driver would have taken a different route and the incident would have been avoided. HR Mobile argues this is speculation "about what *would* have occurred in an alternative universe." This argument is unconvincing. The factual issue of whether negligence relating to a lack of high visibility clothing was a cause in fact of the fatal incident necessarily requires the trier of fact to consider if the incident would have been prevented if such clothing had been worn. Such a determination is essentially the same as determining whether an automobile accident would have occurred if the defendant had been observing the speed limit instead of speeding. Thus, HR Mobile's alternate universe argument is not an accepted test for determining whether a theory of causation is speculative.

Consequently, there are triable issues of material fact relating to causation. Therefore, we need not address the other arguments raised by the parties in connection with the issue of causation. The causation element does not provide an independent ground for affirming the order granting summary judgment.

**DISPOSITION**

The judgment is reversed. The trial court is directed to vacate its order granting the motion for summary judgment and to enter a new order denying the motion. Plaintiffs shall recover their costs on appeal.

_____

FRANSON, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

DETJEN, J.