Filed 12/11/24  White v. Hay CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK WHITE,<br><br> Plaintiff and Appellant,<br><br>   v.<br><br>SHELDON HAY et al.,<br><br> Defendants and Respondents. | G062882<br><br>(Super. Ct. No. 30-2021-01199239)<br><br>O P I N I O N |

   Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

   Law Offices of James Migler and James Migler for Plaintiff and Appellant.

   Tressler, Karl P. Schlecht and Jihoon Kim for Defendants and Respondents.

Plaintiff Mark White appeals from the judgment entered after the trial court granted the motion for summary judgment filed by defendants Sheldon and Michael Hay.[1] White alleged, in July 2003, Sheldon orally promised to transfer a house to White if White paid the rent and maintenance expenses for 30 years. White asserted, inter alia, a claim for promissory estoppel based on Sheldon's alleged promise. The trial court granted summary judgment, concluding the promissory estoppel claim failed because White could not have reasonably relied on the alleged promise. The court found it was undisputed Sheldon did not own an interest in the house at the time of the alleged promise and White had signed a lease identifying Sheldon's parents, Roland and Doris, as the owners. We agree and conclude White's arguments to the contrary are unavailing. We therefore affirm. We also deny Sheldon and Michael's motion for sanctions.

FACTUAL AND PROCEDURAL HISTORY

In March 2022, White filed an amended complaint. It asserted causes of action for (1) promissory estoppel (against Sheldon), (2) avoidance of fraudulent conveyance (against Sheldon and Michael), (3) quiet title (against Michael), and (4) unjust enrichment (against Sheldon and Michael).

White alleged, inter alia, he had known Sheldon since 1991 and rented a condo from Sheldon between 1997 and 2003. White claimed, in 2003, "Sheldon approached [White] and advised him that, if [White] wanted to move out from that condominium unit and into a house, Sheldon would purchase a home and rent it to him under the same terms as the

_____

[1] As Sheldon, Michael, and their parents (Roland and Doris) share the same last name, this opinion refers to them by their first names; no disrespect is intended.

2

condominium." (Capitalizations omitted.) On July 3, 2003, Sheldon allegedly offered to rent the house to White for $1,000 a month in rent plus "$2,300 to cover the mortgage taken out to purchase" the house, with White also expected to pay the maintenance and upkeep expenses. According to White, Sheldon told White "'the house is yours'" if White made the monthly payments and maintained the property for the 30-year mortgage period, which White understood to mean Sheldon would transfer ownership of the house to White if White continuously made the monthly payments. White alleged he accepted the proposal and continued to make payments, but in February 2020, he was served with a 60-day notice to quit the property. White alleged he reminded Sheldon of the promise, but Sheldon deferred to Michael, who sought to evict White from the house.

In March 2023, Sheldon and Michael moved for summary judgment.[2] Relevant here, Sheldon and Michael argued the promissory estoppel claim failed because White's reliance on any alleged promise by Sheldon was not reasonable given that Sheldon did not own the house. Sheldon and Michael also submitted supporting materials, including a separate statement of undisputed material facts, a request for judicial notice, a declaration by Sheldon, and a declaration by their counsel.

Sheldon and Michael's request for judicial notice sought judicial notice of deeds for the house.[3] A grant deed dated June 18, 2003 (notarized June 19, 2003, and recorded June 26, 2003), showed the house transferring to

---

[2] Sheldon and Michael also moved in the alternative for summary adjudication, but since the trial court granted their motion for summary judgment the motion for summary adjudication is not at issue in this appeal.

[3] Copies of these deeds were also attached as exhibits to Sheldon and Michael's counsel's declaration.

Roland and Doris, trustees of the Hay Family Trust; a grant deed dated June 19, 2003 (notarized June 20, 2003, and recorded January 16, 2004) showed the house transferring to the Hay Family Limited Partnership; a partnership transfer deed dated July 12, 2017[4] (notarized April 16 and April 20, 2018, and recorded May 25, 2018) showed the house transferring in certain percentages to Sheldon and Michael, individually and as successor co-trustees of the Hay Family Trust and the Doris L. Hay Family Bypass Trust; grant deeds dated July 26, 2017 (notarized October 16 and October 17, 2018, and recorded October 26, 2018) showed Sheldon and Michael individually transferring their interests in the house to Sheldon and Michael as successor co-trustees of the Hay Family Trust; and a grant deed dated December 31, 2018 (notarized March 19 and March 26, 2019, and recorded March 29, 2019) showed Sheldon and Michael as successor co-trustees of the Hay Family Trust and Doris L. Hay Bypass Trust transferring their interests in the house to Michael individually.

In their separate statement, Sheldon and Michael listed entries regarding ownership of the house, including the following: No. 38 was "Title to the Subject Property was granted to Roland E. Hay and Doris L. Hay, Trustees of the Hay Family Trust [e]stablished April 1, 1999"[5]; No. 19 was "[White] only came into possession of the Subject Property after it was

---

[4] This deed's signature lines for the Hay Family Limited Partnership, listed Sheldon and Michael, each as "Successor Co-Trustee of the Hay Family Trust, est. 4/1/1999 and General Partner[.]"

[5] White's response to the separate statement for this entry stated: "Undisputed but immaterial[.]"

4

purchased by Defendants' parents"[6]; No. 46 was "At the time [White] signed the July 2003 lease, Roland & Doris Hay were the owners of subject property"[7]; and No. 39 was "Title to the Subject Property was granted to the Hay Family Limited Partnership, [a] California Limited Partnership, with its conveyance comprised of the same persons who continued to hold the same proportioned interest in the property, Roland E. Hay and Doris L. Hay, Trustees of the Hay Family Trust established April 1, 1999, pursuant to the Partnership Transfer Deed record on January 16, 2004 as Instrument No. 2004000037230 in the Official Records of the County Recorder for the County of Orange."[8]

In his declaration, Sheldon stated, inter alia, he first met White in approximately 1992 because their sons were friends and Sheldon and White coached their sons' basketball team. Sheldon said, in 2003, his parents, Roland and Doris, owned a condo that was rented by White and his family. According to Sheldon, in 2003, White expressed he wanted to move to a larger house, and to accommodate White's request, Roland and Doris as trustees of the Hay Family Trust purchased the house and White agreed to pay rent that would result in a net cash flow equal to the amount from the condo.

---

[6] White's response to the separate statement for this entry stated: "Undisputed but immaterial[.]"

[7] White's response to the separate statement for this entry stated: "Undisputed but immaterial[.]"

[8] White's response to the separate statement for this entry stated: "Undisputed but immaterial" and "Sheldon Hay and Michael Hay received roughly a combined 25% interest in [the] property in 2017. Property was later transferred solely to Michael Hay in attempt to place property out of reach of [White]."

Sheldon also declared the motivation for forming the Hay Family Limited Partnership "was avoidance of potential inheritance tax" and "titles of all real estate assets were transferred to it." At the time of the alleged promise, Sheldon stated Roland and Doris were the sole general partners of the Hay Family Limited Partnership and had been such since its inception. Sheldon further stated Doris passed away in 2006, which resulted in her part of the estate being held by the Doris Hay Bypass Trust, and "[s]ometime during 2008 Roland Hay transferred his general partnership interest in the Hay Family Limited Partnership to Sheldon and Michael Hay, who became equal general partners of the Hay Family Limited Partnership." After Roland passed away in September 2017, Sheldon stated the assets were distributed and Michael received the house as part of the distribution.

One of the exhibits to the declaration of Sheldon and Michael's counsel was a lease, which the counsel declared to be a "true and correct copy" of the lease signed by White that was produced by Sterling Management Company in response to a subpoena. The lease listed Roland and Doris as the owners, and it had three different signatures dated July 1, 2003. In White's deposition (which was also attached as an exhibit), White testified two of the signatures on the lease were his and his wife's signatures, and he had read the lease before signing it.[9]

White opposed summary judgment. White also filed a response to Sheldon and Michael's separate statement, a declaration of counsel, and objections to certain evidence (including objections to the lease based on lack

---

[9] White does not dispute the third signature on the lease was by Linda Penny. In his response to Sheldon and Michael's separate statement, White wrote "[u]ndisputed" for No.14: "A representative of Sterling Property Management . . . , Linda Penny, signed the lease. . . ."

of authentication, foundation, and personal knowledge).[10] Notably, White did not dispute Sheldon was not the title holder to the house at the time of the alleged promise, nor did he argue Sheldon was a general partner of the Hay Family Limited Partnership at the time of the alleged promise. Instead, White argued "Sheldon held himself out as though he had control over the property[,]" and "[d]espite who owned record title, it was Sheldon who made the deal happen and [White] dealt exclusively with Sheldon."

In June 2023, the trial court granted the motion for summary judgment. Regarding the promissory estoppel claim, the trial court found it failed for lack of reasonable reliance because it was undisputed Sheldon "did not own any interest in the property at the time of the alleged promise" and, two days prior to the alleged promise, White had signed a lease identifying Roland and Doris as the owners. The trial court concluded the fraudulent conveyance, quiet title, and unjust enrichment claims also failed. It granted Sheldon and Michael's request for judicial notice and overruled White's evidentiary objections to the lease.

DISCUSSION

I.

SHELDON AND MICHAEL'S MOTION FOR SUMMARY JUDGMENT

*A. Principles of Summary Judgment and Standards of Review*

"The object of the summary judgment procedure is 'to cut through the parties' pleadings' to determine whether trial is necessary to resolve their dispute." (*Blaylock v. DMP 250 Newport Center, LLC* (2023) 92 Cal.App.5th 863, 869 (*Blaylock*); see also Code Civ. Proc., § 437c.) "'[T]he party moving for

---

[10] It also appears there was a declaration by White in support of his opposition, but it is not in the record on appeal.

7

summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.] A defendant moving for summary judgment may satisfy the initial burden either by producing evidence of a complete defense or by showing the plaintiff's inability to establish a required element of the case." (*Blaylock, supra,* at p. 869.) "If a moving defendant makes the necessary initial showing, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) "'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 877.)

"On appeal, we review the grant of summary judgment on a de novo basis." (*Blaylock, supra,* 92 Cal.App.5th at p. 870.) "In evaluating the summary judgment motion and opposition, the trial court 'must consider all of the evidence and all of the inferences drawn therefrom.' [Citation.] The moving party's evidence is strictly construed, while the opponent's is liberally construed. [Citation.] All reasonable inferences must be drawn in favor of the opposing party and 'summary judgment cannot be granted when the facts are susceptible of more than one reasonable inference . . . .'" (*Ibid.*)

De novo review, however, "'does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record

8

and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.'" (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

As for "evidentiary objections made in connection with a motion for summary judgment," there is a split of authority regarding the standard of review. (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 161.) "We agree with the majority of courts which have held that the abuse of discretion standard applies." (*Ibid.*)

*B. The Trial Court Did Not Err in Granting Summary Judgment*

White argues the trial court erred in granting summary judgment as to the promissory estoppel claim.[11] "A claim for promissory estoppel requires (1) a promise clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) the reliance must be reasonable and foreseeable, and (4) the party asserting the estoppel must be injured by his or her reliance." (*Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 38.) "'"[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts."'" (*Id.* at p. 39.) "'"[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance. . . . 'If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery.'" [Citation.] A mere "hopeful expectation[] cannot be equated with the necessary justifiable

---

[11] On appeal, White has not made any independent arguments for reversal as to the other causes of action.

9

reliance.'"" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 418.)

Here, we agree with the trial court the promissory estoppel claim fails because White could not reasonably rely on Sheldon's alleged promise. As the trial court correctly recognized, it was undisputed Sheldon did not own the house at the time of the alleged promise and White admitted to reading and signing a lease that identified Roland and Doris as the owners.[12] Given these circumstances, we conclude White could not have reasonably relied on an alleged promise by Sheldon—a non-owner—to transfer the property to White.

On appeal, White does not assert Sheldon individually held title to the house at the time of the alleged promise. Instead, White argues the trial court erred because it should have deduced the Hay Family Limited Partnership owned the house at the time of the alleged promise, Sheldon was a general partner at that time, and thus, Sheldon had an ownership interest as a general partner and could bind the partnership with his alleged promise. White reasons the partnership transfer deed in 2017 listed Sheldon as a general partner, and therefore, it can be assumed Sheldon was a general partner in 2003. This argument is unavailing for multiple reasons.

As an initial matter, White did not argue in the trial court Sheldon was a general partner at the time of the alleged promise. "[P]ossible

---

[12] On appeal, White asserts the Hay Family Limited Partnership owned the house at the time of the alleged promise and when the lease was signed, not Roland and Doris, because the deed showing the transfer of the house to the partnership was executed in June 2003. However, even assuming White is correct the Hay Family Limited Partnership was the title holder, it does not change the outcome because a key fact for purposes of this discussion is that the lease did not identify Sheldon as the owner.

10

theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281; see also *Magallanes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924 [concluding "argument is not well taken because any putative additional theories were not addressed in [plaintiff's] opposition to [defendant's] motion for summary judgment and were not brought to the attention of the trial court"].) White does not dispute he failed to make this argument in the trial court, but he says he is merely pointing to documents already contained in the record and asking this court to deduce Sheldon was a general partner in 2003. While White is relying on documents already in the record, that does not excuse his failure here to identify and argue to the trial court the supposed triable issue of material fact—i.e., whether Sheldon was a general partner at the time of the alleged promise. By failing to do so, White forfeited the argument under these circumstances.

In any event, even were we to consider this argument, the record does not support White's assertion that Sheldon was a general partner at the time of the alleged promise. While evidence in the record supports Sheldon and Michael's status as general partners in 2017, that alone does not lead to a reasonable inference they were general partners in 2003—which was fourteen years earlier when their parents were still alive—and the evidence in the record is to the contrary. White asserts "[t]he record on appeal reflects no other evidence showing that Michael and Sheldon became general partners at some point in time other than 1999[,]" and Sheldon and Michael "choose not to inform the court or counsel when, if not in 1999, the brothers became general partners." However, Sheldon declared Roland and Doris were the sole general partners of the Hay Family Limited Partnership at the time

11

of the alleged promise, and in 2008 (approximately five years later), Roland "transferred his general partnership interest in the Hay Family Limited Partnership to Sheldon and Michael Hay, who became equal general partners[.]"

Additionally, White argues there is a triable issue of fact as to whether his reliance was reasonable because "he trusted his then-close friend Sheldon to keep his promise and transfer the property once the terms of the promise were kept[.]" We are not persuaded White and Sheldon's friendship creates a triable issue of fact as to reasonable reliance under the circumstances here, where there is no triable issue of fact that Sheldon did not own the property at the time of the alleged promise and White had signed a lease identifying Roland and Doris as the owners.[13]

White also asserts "Sheldon negotiated the real property transaction to acquire the subject property" and "White dealt exclusively with Sheldon in regards to the subject property."[14] However, the trial court found, to the extent White is contending there is a triable issue of fact as to whether Sheldon is liable as a purported agent of his parents, such an argument failed. Citing Civil Code section 2343 and *Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, the trial court reasoned "[a]n agent is responsible to third persons as a principal for his acts within the course of his agency

[13] Given our conclusion, we need not address Sheldon and Michael's contention White waived his argument about friendship by not listing his and Sheldon's friendship in his response to the separate statement.

[14] White does not cite to the record for these statements in his brief, but he quotes later in his brief from his deposition testimony regarding his interactions with Sheldon, including his testimony he "only dealt with Sheldon."

12

when his acts are 'wrongful in their nature,'" but White "does not allege Sheldon Hay's alleged oral promise was wrongful or independently tortious." On appeal, White has not addressed this ruling by the trial court and has not provided any legal analysis supporting Sheldon's liability as an agent. Thus, White has waived any argument Sheldon should be liable as an agent. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [noting, "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Finally, White argues the trial court erred in not excluding the lease from evidence. We conclude the trial court did not abuse its discretion. In the trial court, White objected on the grounds of lack of authentication, foundation, and personal knowledge. But White testified in his deposition he had read the lease and it was his and his wife's signatures on the lease. Indeed, White admits he "conceded that both he and his wife read and signed the lease." This testimony was sufficient to authenticate the lease. (See Evid. Code, § 1400 ["[a]uthentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it to be"]; Evid. Code, § 1413 ["writing may be authenticated by anyone who saw the writing made or executed"].) Moreover, White's testimony established sufficient personal knowledge and foundation to testify as to the lease.

White asserts several reasons why his objections to the lease should have been sustained, none of which is persuasive. White points to his deposition testimony where he said he did not recall the parents were listed as the owners. He also contends the property was owned by the partnership, not the parents individually, and it was signed by Linda Penny but there is

13

no evidence she was an agent of the limited partnership. These arguments are misplaced as they do not go to the authenticity of the document.[15]

## II.

### SHELDON AND MICHAEL'S MOTION FOR SANCTIONS

Sheldon and Michael filed a motion seeking $45,170.25 in monetary sanctions, arguing this appeal was frivolous. "An appeal is frivolous when it is prosecuted for an improper motive or when it indisputably has no merit, that is, 'when any reasonable attorney would agree that the appeal is totally and completely without merit.'" (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1218.) "'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal.'" (*Ibid.*) Although we have concluded that White's appeal fails, we decline to find it was frivolous.

---

[15] White says there is a triable issue of fact as to whether the lease is enforceable and "[t]his alone warrants reversal[.]" However, whether the lease was ultimately enforceable does not alter our conclusion White could not reasonably rely on Sheldon's alleged promise.

## DISPOSITION

The judgment is affirmed. Respondents' motion for sanctions is denied. Respondents shall recover their costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.